EDMUND BANG v. THE STATE.

1. CRIMINAL LAW. *Homicide. Actual danger. Killing unavoidable. Instruction.*
In the trial of an indictment for homicide, it is error for the court to instruct the jury, on behalf of State, that "there must be actual danger at the time" to justify a killing, and that the danger "must be imminent, pressing and unavoidable." The danger to the slayer need not be *actual (Dyson v. The State*, 26 Miss. 362), nor the killing unavoidable, to justify a homicide. *Long v. The State*, 52 Miss. 26.

2. SAME. *Homicide. Deceased being unarmed. Justification of slayer.*
Where A. is assailed by B., whose conduct indicates his intention and ability to immediately do A. some great bodily harm, and A., having good ground to believe, and in fact believing, that he is in immediate danger of the accomplishment of B.'s purpose, slays the latter, the killing is justifiable, notwithstanding the fact that B. had no deadly weapon when he was slain, if his slayer was ignorant of that fact.

APPEAL from the Circuit Court of Jackson County.

Hon. S. H. TERRAL, Judge.

Edmund Bang was indicted for the murder of James Ladner, was convicted and sentenced to be hung. He appealed to this court and assigned for error the action of the court below in giving the third and fourth instructions for the State, and in modifying the first instruction asked by the appellant. The objectionable instructions given for the State are in the following language : —

"3. The bare fear of danger or of great bodily harm, unaccompanied by any overt act indicating a present intention to kill or injure, will not warrant a person in killing another. There must be actual danger at the time. There must be an overt act on the part of the deceased to carry out his threat, to warrant his killing, or the danger must be imminent, pressing and unavoidable."

"4. Homicide in self-defence is justifiable, when the accused had a reasonable ground to apprehend a design to commit a felony on the part of the deceased, or to do defendant some enormous bodily harm, and there is at the time imminent

danger of such design being accomplished, and such danger is impending and unavoidable.''

The first instruction asked by the defendant, after being modified by the court, was given in the following language, the words in parenthesis having been inserted by the court, and the word '' manner '' having been stricken out where the words '' overt acts '' appear : —

'' The court instructs the jury for the defendant, that if they believe from the evidence that the defendant was at his home, or where he had a right to be, and the deceased came to the gate of the place where the defendant was staying, and told the defendant that he, the deceased, was coming into the gate and was going to cut the defendant's damn heart out, (and that Ladner had the means to execute such threat), and that defendant told the deceased not to come into the gate and towards the defendant, and that the defendant from the words (overt acts) and threats of the deceased (indicating a purpose and ability to kill defendant), had reasonable ground to believe from such overt act that peril to his life or person was imminent and impending and to slay was necessary to protect his life, then the jury should find the defendant not guilty.''

*C. H. Wood*, for the appellant.

There is no proof of any weapon upon the person of the deceased except a pocket-knife found in his pocket next morning after the killing. The whole theory of the prosecution seems to be that, although repeated threats were made by deceased, yet if he had no means except the pocket-knife to carry his threats into immediate execution, the accused was not justified in the killing. That the killing must be unavoidable. As to instruction No. 3, asked by the State, we submit that the word unavoidable to the last part of the instruction, was error in this case. It would seem, from this instruction, that if the accused could have avoided killing the deceased by flight from his home, he must do it. No law requires a man in this country to flee from his home and family to save his

life or avoid a difficulty. *Long* v. *The State*, 52 Miss. 23. Instruction No. 4 is subject to the same objections. In the modifying of the first instruction asked by the defendant, we complain that the court erred in instructing that the party slain must have "had the means to execute such threats" and "overt acts" and "indicating a purpose and ability to kill defendant." These words, we claim, were calculated to mislead the jury. The threats made at the time and place and manner, were sufficient to justify accused in taking the life of deceased.

*T. C. Catchings*, Attorney-General, for the State.

Instructions Nos. 3 and 4, in defining the real or apparent danger which will justify homicide, say that it must be "imminent, pressing and unavoidable." It is objected, that the use of the word, "unavoidable," would require the resort to flight if necessary, as a means to avoid homicide. Perhaps, taken alone, and rigidly interpreted, there would be some plausibility in this construction, but when taken with other instructions, it has no support. In No. 2, for the defence, the jury are expressly told, "that a man need not avoid danger by flight," etc. It is urged that the first instruction for the defence, as modified by the court, required the jury to believe "that Ladner had the means to execute such threat," before they could find for the defendant. The first modification of that instruction seems obnoxious to this objection, but it is remedied by the second modification, which only requires that the words, acts and threats of the deceased should indicate that he had the ability to execute his threats. The defect is also remedied by the fifth, sixth, seventh and eighth instructions for the defence, in all of which the jury are told that the defendant had the right to kill the deceased, if from the words, acts and manner of deceased he had reasonable cause to believe that he had the means to execute his threats, and that he was about to attempt to carry them into execution.

CAMPBELL, C. J., delivered the opinion of the court.

The third instruction for the State declares that "there

must be actual danger at the time" to justify a killing, and the danger "must be imminent, pressing and unavoidable." The first part quoted was condemned in *Dyson* v. *The State*, 26 Miss. 362, and the other in *Long* v. *The State*, 52 Miss. 23.

The latter part of the fourth instruction, which announces that the danger to the accused, to justify him in killing, must have been "unavoidable" is objectionable. *Long* v. *The State*, *supra.* It is not true that the danger must be unavoidable to justify the assailed from acting in his defence. Remarks to that effect have been made by judges, and instructions containing such announcement have been approved in this court, but this precise matter received consideration in the case first cited, which contains the view of this court on that subject.

The court erred in modifying the first instruction asked by the accused. This instruction invoked the doctrine of the right of self-defence on the hypothesis that his assailant was approaching the accused angrily, with a declaration of his purpose to commit a deadly assault upon him. The court so modified it, as in connection with the third instruction for the State to convey the idea that, if the killing occurred when the deceased had no deadly weapon in his hands, it was not justifiable.

The accused had no right to kill his adversary because of his declarations or his approach towards him, unless there was something to betoken immediate danger of life or great bodily harm, if he was permitted to continue his approach; but it is not true that the right of the accused to shoot depended on his assailant having a deadly weapon in his hand, or even on his person, if the jury believed that the declarations and demonstrations of Ladner were such as to raise a reasonable apprehension in the mind of the accused that Ladner was possessed of the means to kill him or do him great bodily harm, and was proceeding then to do it.

The assailed is not required to wait until he is in the power of his assailant. The accused was not authorized to kill Ladner because he approached him angrily and threateningly,

but, if he did not know he was not armed, and if the conduct of Ladner was such as to indicate his ability to accomplish his declared purpose, and the accused had good ground to believe, and did believe, he was in immediate danger of great bodily harm then about to be done him, and acting on such belief, in good faith for his own protection only, and not from an evil disposition, killed his assailant, he was justifiable, even though the assailant was not armed... It would be a hard doctrine to hold that the assailant must have in his hands a deadly weapon to justify the assailed from acting for his defence, in this day of improved weapons, which may be drawn and used with fatal effect in a few seconds; and it would be unmerciful to deny to the accused the benefit of appearances as presented to him and honestly acted on.

One must not simulate apprehension, nor kill another without just ground to believe himself in imminent danger of great bodily harm, but of all this the jury is to judge, and, if it thinks the accused confronted, threatened and situated as he was, justly entertained serious apprehension of great personal injury then about to be done him, and acted from such apprehension, and not from any other motive than to protect himself from such threatened injury, he should be acquitted. One must not kill an unarmed man who threatens him, if he knows he is not armed, but if he does not know whether he is armed or not, and he threatens and acts as if he was, and thus creates the impression that he is, and the accused believes him to be, and acts on such belief, he should not be held responsible as if he had known the unarmed condition of his assailant, as afterwards discovered. These inquiries should be left to the jury unembarrassed by erroneous instructions.

Judgment reversed, and new trial awarded.