Statement of the case.

## J. H. ELLERBE *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Homicide. Murder. Instruction. Penalty.*

   An instruction in a murder case that if defendant is found guilty of manslaughter, the court may fine him not less than five hundred dollars, or imprison him in jail for one year, or sentence him to the penitentiary for not less than two years, is erroneous. The jury should not be instructed by the court touching the punishment for manslaughter.

2. SAME. *Self defense.*

   An instruction in a murder case, where self defense is relied on, that to make out the defense the danger to defendant must have been so urgent that there was no reasonable mode of escape except to kill the deceased, is erroneous. *Bang* v. *State,* 60 Miss., 571.

3. SAME. *Controverted facts.*

   An instruction in a murder case which assumes as true matters which are controverted by the evidence is erroneous.

4. SAME. *Reasonable doubt.*

   An instruction in a criminal case defining a reasonable doubt as only requiring the jury to conscientiously believe, after comparing and considering all the evidence, that it establishes the guilt of the prisoner, is erroneous.

FROM the circuit court of Scott county.

HON. JOHN R. ENOCHS, Judge.

For a previous report of the case, see *Ellerbe* v. *State,* 75 Miss., 522.

Appellant, Ellerbe, was indicted for the murder of one J. P. Steele at the April, 1897, term of the circuit court of Lauderdale county. A change of venue was granted, and the cause removed to the circuit court of Scott county, where a trial was had. A short time before the homicide appellant and deceased had a difficulty, and deceased made some threats that he was going to shoot appellant; appellant, on the night of the

killing, walked into a restaurant where deceased had been getting his meals, and was at the time sitting at a table, eating; soon after appellant walked into the restaurant, a conversation was begun between the parties in an ordinary tone of voice; deceased attempted to get up out of his chair with a fork in one hand which he pointed in a threatening manner toward appellant, and at the same time placed the other hand behind him, when appellant drew a pistol, shot four or five times, and killed deceased. The trial resulted in the conviction of appellant of manslaughter and judgment was entered accordingly, from which this appeal is prosecuted.

*A. B. Amis, Ethridge & McBeath* and *F. V. Brahan*, for appellant.

The third instruction is erroneous; because, while it is permissible for the court to instruct the jury as to the punishment when the verdict is guilty of murder, or other capital offense, as held in *Brown* v. *State*, 72 Miss., 997, yet it is improper in a murder case to instruct the jury as to what punishment the law inflicts for the crime of manslaughter. The reason of this is that where the jury find a verdict of guilty of murder they have, under the law, the right to fix the punishment, and for that reason they should be informed by the court as to the punishment to be inflicted in case they return any particular verdict convicting of murder in order that they may know what sort of verdict to render to have the kind of punishment inflicted that they decide on. But in a conviction for manslaughter, this is not true. On the trial of a charge of manslaughter, the jury have absolutely nothing to do with what sort or how much punishment is to be inflicted on the defendant in case he is convicted. Their only function, their only power, is to say from the testimony and the law applicable thereto, whether accused be guilty or not guilty. That is all they have the right or power to do under the law. Such being the case, what should the jury consider in reaching their verdict of guilty or not guilty?

Manifestly the testimony and the law applicable to that testimony and nothing else. What right have the jury in such a case to consider anything but the testimony and the law applicable thereto? None, most assuredly none.

What, then, is the necessity, the reason, the excuse, if you please, of the court telling the jury what the punishment for manslaughter is, and more especially of telling them the minimum penalties and failing to inform them of the maximum penalties? There is no testimony in the case to which that part of the instruction which informs the jury of the punishment fixed by law for a person convicted of manslaughter could apply in any event. Under no conceivable phase of the case could this information aid the jury in arriving at the very truth of the question of guilt or innocence of the charge of either murder or manslaughter. And if this be true it was error to grant the instruction. *Hogan* v. *State*, 46 Miss., 274; *Coop. Assn.* v. *McConnico*, 53 Miss., 233; *Kinnare* v. *Gregory*, 55 Miss., 612; *Layton* v. *State*, 56 Miss., 791; *Collins* v. *State*, 71 Miss., 691; *Fortenberry* v. *State*, 55 Miss., 403.

But what was the reasonable effect of such a charge on the minds of the jury? We conceive it to be this, viz.: " We as jurors are not satisfied beyond a reasonable doubt that the defendant is guilty of murder. It may be true as he claims that the killing was done in self-defense. We are in doubt about the matter. But then, on the other hand, we do not think homicides should go wholly unpunished. We are not willing to inflict the death penalty or the life sentence, because there is too much doubt about the matter for that; but the court has told us what the punishment for manslaughter is, and it is not severe, and so perhaps we can make matters right by returning a verdict of guilty of manslaughter."

The ninth instruction is almost a literal copy of a portion of the opinion of Simrall, J., in *Evans* v. *State*, 44 Miss., 773, and our contention is: First. That, although copied from the opinion as above stated, the instruction does not correctly an-

nounce the law as it is.  Second.  That, as an instruction to a jury in a case like the one at bar, it is further vicious because it assumes as true certain facts which under the law the jury should determine for themselves.

The instruction does not announce the law correctly, because: (*a*) It makes actual danger an element of the hypothetical case. The language is, ''and who at the time is making no hostile demonstration dangerous to life.''  The authorities hold that actual danger is not necessary; that the language of such an instruction should be ''apparently dangerous,'' etc., *Godwin* v. *State*, 19 So. Rep., 712; *Dyson* v. *State*, 26 Miss., *362; *Bang* v. *State*, 60 Miss., 571; Ann. Code, 1892, § 1152, paragraph F. & E.  (*b*) It makes actual danger to life alone an element of the hypothetical case. The authorities say that the language should be ''apparently dangerous to life or limb'' (great bodily harm, etc.).  Code 1892, § 1152, paragraph F. & E.  *Green* v. *State*, 28 Miss., 687.  (*c*) If the instruction be considered as stating an hypothetical case, it should embody all the elements of the law on that subject which are applicable to the facts of the case on trial.  *Dean* v. *Tucker*, 58 Miss., 487; *Collins* v. *State*, 71 Miss., 691.  This the instruction does not do; because in stating the hypothetical case it states a part of the law of self-defense and fails to state all the law on that subject which is applicable to the case as made by the testimony.  Again, that part of the law of self-defense stated in the hypothetical case put by the instruction is not applicable, as stated, to any testimony, or warranted by any fact or circumstance in the case.

(*d*) The hypothetical case put by the instruction contains these word: ''and especially if not prepared and armed so to do.''  To do what?  To take life, evidently.  This is wrong. First.  Because it is wholly immaterial to the exercise of the right of self-defense by the accused, whether or not the deceased was ''prepared and armed'' in any manner or to any extent.  The right rests on a wholly different basis—to wit,

the appearance of danger to life or great bodily harm. *Dyson* v. *State*, 26 Miss., 362; *Bang* v. *State*, 60 Miss., 571. Second. Because it tells the jury that "especially if" deceased is "not prepared and armed" to take life, etc. The law is that it is sufficient to justify accused in killing deceased, if there was apparent danger that the deceased would then do accused some great bodily harm less than taking life. Code 1892, paragraph F. & E. and annotations. Why then the necessity for deceased to be "prepared and armed" to take life in order to justify the accused? Evidently none. Third. Because all the testimony in the case on the point shows beyond cavil that deceased was in fact "prepared and armed" to do accused great bodily harm, even to the taking of life with the iron fork; and because there is no testimony showing that deceased was not otherwise "prepared and armed" to take life or do accused great bodily harm at the time accused shot and killed him.

(*e*) The concluding sentence of the instruction informs the jury that "the danger to life or of great personal injury, must be imminent, present at the time of the killing, real or apparent and so urgent that there is no reasonable mode of escape except to take life." This is wrong. First. Because, while it tells the jury that the danger may be real or apparent, it informs them that whether real or apparent, the danger must actually be "so urgent," etc. It is sufficient if the danger is merely apparent and that it be apparently "so urgent," etc. In other words we contend that the words "necessary self-defense," as used in the statute, section 1160, and the law books mean nothing more nor less than that to the accused it must, honestly and reasonably, be apparently necessary to then kill the deceased in order to then save his own life or person from great bodily injury. And if we be correct in this, as we submit that we are, on the authorities, then it necessarily follows that any elaboration or explanation must be qualified so as to convey the idea that the killing was reasonably and apparently necessary at the time. *Cotton* v. *State*, 31 Miss., 504;

*Fortenberry* v. *State*, 55 Miss., 403 ; *Kendrick* v. *State*, 55 Miss., 436. Second. Because the instruction informs the jury that the danger, real or apparent, must be "so urgent that there is no reasonable mode of escape except to take life." We insist that the law is that it is not necessary, in order to justify taking life, that the danger be actually urgent, nor that the killing be unavoidable. *Long* v. *State*, 52 Miss., 23 ; *Bang* v. *State*, 60 Miss., 571, and cases last above cited.

The thirteenth instruction for the State is erroneous. *Brown* v. *State*, 72 Miss., 95; *Burt* v. *State*, 72 Miss., 408 ; *Hemphill* v. *State*, 16 So. Rep., 491; *Johnson* v. *State*, 16 So. Rep., 494 ; *Campbell* v. *State*, 17 So. Rep., 441 ; *Rucker* v. *State*, 10 So. Rep., 121 ; *Orr* v. *State*, 18 So., 118 ; *Burton* v. *State*, 18 So., 284 ; *Williams* v. *State*, 19 So., 826 ; *Webb* v. *State*, 19 So., 238 ; *Godwin* v. *State*, 19 So., 712 ; *Powers* v. *State*, 74 Miss., 777.

*Monroe McClurg*, attorney-general, for appellee.

In Peffer's case, 80 Ia., 580, it is said :

"The court in its charge to the jury defined the crimes of murder in the first and second degrees in the words of the statute, giving the punishment for each, and then described manslaughter as follows : 'Manslaughter is the unlawful killing of a human being without malice, express or implied, and is punishable by imprisonment in the penitentiary not exceeding eight years.' Appellant complains of the failure of the court to include in its description the fine of *one thousand dollars*, authorized by statute. If there is any good reason for stating in the charge the punishment authorized for a given offense when the punishment is not to be fixed by the jury, our attention has not been called to it. When such punishment is given, it should be stated accurately. It was not the province of the jury in this case to fix the punishment for the crime of which they found defendant guilty, nor for any lower crime had they found him guilty in that, and there was nothing in

the charge on which they might infer that such was their duty. They certainly had no right to determine the crime from the authorized punishment, and we cannot presume that they did so. It is suggested by counsel that the failure of the court to fully state the punishment which might be inflicted for manslaughter may have induced the jury to agree to the verdict rendered, for the reason that, in their opinion, eight years' imprisonment would not be a sufficient punishment for the offense committed, although they, in fact, believed that it was only manslaughter. We do not think that such a conclusion can be fairly drawn when the entire record is considered, and are satisfied that the omission in question is without prejudice to defendant. In Russell case, 57 Ga., 420 (424), the court says : ' In regard to the charge of the court as to the punishment of the defendant in this class of cases, we would simply remark, that the jury had nothing to do with the punishment prescribed by law for the offense, and it is much the better practice for the court to say nothing about it in its charge to them.' The error was held to be immaterial.''

Fortunately for truth and justice, the irregularities contained in the thirteenth instruction were cured by several of the instructions in the case, especially the seventh and twelfth for the state, and by nearly all of the twenty-three granted for the appellant, and, because of which, the judgment will not be reversed by reason of the mysteries in the thirteenth instruction, which are altogether past understanding. Burt's case, 72 Miss., 408.

CALHOON, J., delivered the opinion of the court.

This is an indictment for murder and a conviction of manslaughter. The entire defense was put on the ground that the killing was justifiable, and in self-defense. In this condition the state asked an instruction, numbered 3, in these words : '' The court instructs the jury that they may find either one of the four following verdicts : First. ' We, the jury, find the

defendant guilty as charged in the indictment.' Under this
verdict the punishment is death. Second. ' We, the jury,
find the defendant guilty as charged in the indictment, and fix
his punishment at imprisonment in the penitentiary for life,'—
in which case the court will sentence the defendant to the peni-
tentiary for life. Third. ' We, the jury, find the defendant
guilty of manslaughter.' Under this verdict the court may
fine the defendant in any sum not less than $500, or imprison
him in the county jail not more than one year, or both, or may
sentence him to the penitentiary not less than two years. Or,
fourth, ' We, the jury, find the defendant not guilty,' which
would be an acquittal." We think the granting of this charge
reversible error, because of its third clause. It is faulty in
stating the punishment, and that in its milder forms. It looks
too much like an invitation to the jury to compromise on the
lesser offense. The jury have nothing to do with, and should
be told nothing of, the character or degrees of punishment in
any case whatever, except in those capital cases in which the
statutes authorize them, upon conviction, if they see proper, to
fix the penalty at imprisonment for life in the penitentiary; and
in such cases they should not be charged touching the punish-
ment which the court may inflict if the accused should be con-
victed of any constituent offense not so punishable. It may be
that this charge, and it alone, produced the manslaughter ver-
dict. The ninth instruction given for the state, we think, was
also erroneous. It tells the jury the danger, to justify the kill-
ing, must be " so urgent that there is no reasonable mode of
escape except to take life." *Bang* v. *State*, 60 Miss., 571, and
the authorities it cites. Besides, the charge assumes that the
shooting was " on sight," which was not the fact, and assumes
also as true that deceased was not " prepared and armed," and
that he was " at the time making no hostile demonstrations,"
—both questions of fact. The thirteenth charge for the state,
after an effort to define a reasonable doubt, concludes thus :
" All that is required to enable a jury to return a verdict of

guilty is, after a comparison and consideration of all the testimony, to believe conscientiously that it establishes the guilt of defendant." We think this instruction should have been refused. *Powers* v. *State*, 74 Miss., 777, 21 So., 657, and the authorities cited in the opinion in that case.

*Reversed and remanded.*