Ashby *v.* State.*

(En Banc. Nov. 24, 1924. Suggestion of Error Overruled Dec. 15, 1924.)
[102 So. 180. No. 24356.]

1. Homicide. *Evidence held sufficient for submission of question of
     whether defendant was guilty of murder.*

   In prosecution for murder, evidence *held* to warrant submission to
     jury of whether defendant was guilty of murder, as against con-
     tention that he could not be convicted of higher crime than man-
     slaughter.

2. Homicide. *Instruction bearing on issue of self-defense held not to ex-
     clude doctrine of apparent necessity.*

   In prosecution for murder involving self-defense issue, instruction
     defining murder as "the killing of a human being without

authority of law, by any means, or in any manner, when done with the deliberate design to effect the death of the person killed, and not in necessary self-defense," *held* proper, as against contention that words "not in necessary self-defense" excluded the doctrine of apparent necessity.

HOLDEN and ANDERSON, JJ., dissenting.

*Headnotes 1. Homicide, 30 C. J., Sections 559, 588; 2. Homicide, 30 C. J., Section 630.

APPEAL from circuit court of Lee county.
HON. C. P. LONG, Judge.
Clinton Ashby ʹwas convicted of murder, and he appeals.  Affirmed.

*Geo. T. Mitchell* and *S. H. Long,* for appellant.

The salient facts are these: Deceased was killed in a sudden quarrel, in which deceased and his companion were the aggressors, and after the accused had backed forty or fifty feet, telling deceased and his companion not to come on him.  The killing was done with a deadly weapon, obtained after the quarrel was started but which remained in the pocket of the appellant until he had backed forty or fifty feet, asking all the while that the aggressors do not come on him.

We respectfully submit that on the facts this court should not allow a verdict of murder to stand.  In the first place, we earnestly urge that the judgment should be set aside and the defendant set free.  We cannot conceive of a case in which a more perfect justification for killing an adversary could be presented.  It has long been the settled law in Mississippi that one when attacked does not have to run to avoid danger and the necessity of killing his adversary but can stand his ground.  Yet defendant in this case by the undisputed testimony of all the witnesses backed forty or fifty feet before even pulling his gun, telling the deceased and his companion all the while not to come on him.  *Long* v. *State,* 52 Miss. 23;  *Bang* v. *State,* 60 Miss. 571.  It is

unquestionably the law in Mississippi, also, that the danger does not have to be immediate and pending at the very moment of the killing. A party may anticipate the attack of his adversary, where the circumstances require the same to protect himself. *Fortenberry* v. *State,* 55 Miss. 402; *Fendrick* v. *State,* 55 Miss. 436. Further the law is settled in Mississippi, we think, that the term "great bodily harm" does not mean such bodily harm as may be inflicted by mere blows with the hands or feet. *Waldrop* v. *State,* 46 Miss. 567; *Chase* v. *State,* 46 Miss. 683. But this court has frequently held that when the aggressor is much larger than the accused so that defendant was liable to receive great bodily harm or injuries at his hands, that the accused is justified in using a deadly weapon to protect himself though deceased was unarmed. *Hill* v. *State,* 97 Miss. 304.

It is the province of the jury to pass on what is imminent and impending danger but where the facts are not in dispute and taking the evidence of the state alone it can be ascertained by this court just what the facts were, we submit that this court can set aside a judgment of the jury where it is palpably wrong and contrary to these facts. *Jones et al.* v. *State,* 60 So. 735; *Jones* v. *State,* 98 Miss. 899.

We have in addition to the authorities above cited, read many other decisions involving the subject of homicide as treated in former days in this court and we have not found one in which the court allowed the appellant to be hung where the killing took place in the heat of a quarrel. *Pigott* v. *State,* 107 Miss. 552; *Staiger* v. *State,* 110 Miss. 557; *Quick* v. *State,* 96 Miss. 871; *Cryder* v. *State,* 71 Miss. 467. The appellant under the threats in this case had a right to arm himself and the undisputed facts show that he did not use the gun until sorely pressed by two antagonists. *Echols* v. *State,* 99 Miss. 683; *Jones* v. *State, supra; Long* v. *State,* 52 Miss. 23.

We respectfully submit in the light of the above that the judgment of the court should be set aside as being contrary to the law and evidence and the defendant set free. And if wrong in this, certainly the issue of whether the defendant was guilty of murder should never have gone to the jury under the facts in this case; but the defendant should be tried for the crime of manslaughter alone.

*Rush H. Knox,* Attorney-General, for state.

It appears from the record that neither Crider nor the deceased were armed and were making no hostile demonstration against appellant. The appellant testified in his own behalf, and was the only witness that did testify for him who saw the killing. "Murder is the killing of a human being without the authority of law, by any means or in any manner when done with the deliberate design to effect the death of the person killed." The appellant in his testimony admits that when he first saw the deceased and Crider that he was not armed, but that after they had asked him about the pay for the wood the first time, and before they had asked him the second time for the pay for the wood, he armed himself with the deadly weapon. The jury had the right to say that the killing was done with malice aforethought in that he armed himself with this pistol.

This court for a half century has approved of this law: "That while malice aforethought is a necessary ingredient to the crime of murder, that it does not necessarily take years, months, weeks, days or even hours within which to form such malice, but that the same may be formed within a moment's time." The appellant asked for and secured from the court a manslaughter instruction in this case, but the jury, the sole and only judge of the evidence who read this instruction, did not convict him of murder, and they did this after hearing proof

that perhaps the deceased and his friend; Crider may have approached the appellant in the street, but the state's proof shows that they were unarmed and made no hostile demonstration at any time before the fatal shot was fired.

The authorities cited by learned counsel for the appellant are not applicable in this case. There is but a slight conflict in the evidence in this case. Under such circumstances the appellate court will not disturb the verdict even though this court would have rendered a different verdict had they been the court below. *Brown* v. *State,* 103 Miss. 639. A solemn finding of a jury will not be disturbed on appeal where there is evidence, which if proved, would justify a verdict. This court will not disturb a conviction merely because they would have rendered an opposite verdict had they been sitting in the place of the jury. *Jackson* v. *State,* 105 Miss. 782; *Fielder* v. *State,* 108 Miss. 580. The credibility of witnesses and the weight of testimony are questions to be determined by the jury and its finding will not be disturbed on appeal unless some material error of law appears in the presentation or submission of the case. *Hunt* v. *State,* 108 Miss. 588; *Simmons* v. *State,* 109 Miss. 605; *Wells* v. *State,* 112 Miss. 76.

*George T. Mitchell* and *S. H. Long* filed a suggestion of error in which they elaborately re-argue the facts citing the following authorities: *Beasley* v. *State,* 64 Miss. 522, 8 So. 234; *State* v. *Hill,* 20 N. C. 629, 34 Am. Dec. 396; *Cryer* v. *State,* 71 Miss. 467, 14 So. 261; *Ayers* v. *State,* 60 Miss. 709; *Williams* v. *State,* 60 Miss. 709; *Williams* v. *State,* 120 Miss. 604, 82 So. 318.

Argued orally by *George T. Mitchell,* for appellant, and *Rush H. Knox,* for appellee.

COOK, J., delivered the opinion of the court.

At the March, 1924, term of the circuit court of Lee county the appellant was indicted, tried, and convicted

upon a charge of murder, and was sentenced to suffer the death penalty, and from this conviction and sentence he prosecuted this appeal.

The material testimony offered by the state was substantially as follows:

The deceased, Guy M. Morgan, and Clyde Crider, two young white men, went into the negro section of the city of Tupelo for the purpose of collecting the purchase price of a load of wood which had been previously sold on credit and delivered to a negro. When they reached the house where the wood had been delivered, they entered the house, but found no one there except a negro boy and girl. They inquired for the negro who owed for the wood, and were informed that she was away from home. About that time the appellant came into the room, and the deceased asked him if he was not the one who owed for the wood. The appellant denied that he owed for the wood, and proceeded into a back room. The deceased and his companion then walked out into the yard, and almost immediately the appellant came out. The deceased then said to the appellant:

"Well, I come after my money to-day, and I have got to have it. I am going to the corner, and you go and see if you can see anything of that negro woman that owes for the wood."

The appellant then started down the street, and the deceased asked him where he was going, and he stated that he was going to see if he could find the woman. The deceased and the witness, Crider, then went in the opposite direction to the corner of the street, where they remained a few minutes. While there a negro who lived nearby told them that the appellant was the one who owed for the wood. They then turned and proceeded back toward the house that they had first approached. The witness then describes what transpired in the following language:

"Guy and me walked across the street, and Clinton come up and met us, and Guy says, 'Ain't you the one

that owés for the wood?' and he said, 'No, God damn it, I told you once,' and Guy said, 'Don't get so hot about it,' and he said, 'I'm getting tired of this God damn white trash running over me,' and by that time he was in the middle of the street, and he said, 'Stop! you sons of bitches,' and drawed his gun and shot him down right there.''

The witness testified that he then stooped over the wounded man to help him up, and the appellant threw the gun on him and said, "I might as well shoot you and be done with it," but that a woman standing near exclaimed, "Don't do that," and thereupon the appellant turned and ran away. On cross-examination this witness testified that while the appellant was cursing them he was "walking sorter sideways and backing," and that the deceased and the witness started towards the appellant, that when the shot was fired the appellant had backed out into the middle of the street, and the witness and the deceased were then about ten or twelve feet from the appellant, and that they had nothing in their hands. There was also testimony that the officers trailed the appellant into a swamp, and that when he was discovered all of his body except the head was submerged in water.

The appellant testified in his own behalf, and his version of the affair up to the point of the second and last meeting of the parties was about the same as that of the witness, Crider. He gave his version of the colloquy between him and the deceased at the time of this second meeting, and explained the killing in the following language:

"He said, 'Don't give me no smart talk about it,' and he stopped me again, and I said I didn't owe him for no wood, and he said, 'You are a damn lie,' and I told him he was another, and he started on me, and I told him not to walk up on me, and he run his hand in his pocket and he said, 'I'll shoot your brains out,' and I up and shot and turned around and walked off."

He further testified that he shot ''because he was going to shoot me.'' On cross-examination he admitted that he did not have a pistol at the time he first saw these young men in the house, but stated that he went to a house about a block away and borrowed the pistol, and then returned to the place where he met the deceased the second time.

At the conclusion of the testimony the state secured one instruction, submitting to the jury the issue of murder; while the appellant secured several instructions, one of which authorized the jury to return a verdict of manslaughter if they believed from the evidence that the fatal shot was fired in the heat of passion without malice aforethought, but that same was unjustifiably fired.

The only ground for reversal presented in the written assignment of error and in the brief of counsel is that the issue of whether the defendant was guilty or murder should not have been submitted to the jury, and that no verdict for a higher crime than manslaughter should be allowed to stand.

We have set out at length the substance of the testimony in the record, and, in passing on the question of the sufficiency of this testimony to sustain a conviction of murder, we do not think any detailed discussion of this testimony is necessary. According to the testimony of the defendant, as well as that for the state, nothing occurred during the first meeting and conversation between the defendant and the deceased that would suggest or justify the conclusion that the defendant needed a weapon for self-defense or any other purpose; but he admitted that after this meeting he immediately went away and borrowed a pistol, and, having armed himself with this deadly weapon, he returned to the place where he had left the deceased and his companion, and we think that fact, in connection with the testimony of the witness, Crider, as to the acts, conduct, and demonstrations of

the defendant at the time of the second meeting of the parties, was sufficient to sustain the conviction of murder, and that there was no error in submitting this issue to the jury.

The court granted the state an instruction defining murder as ''the killing of a human being without authority of law, by any means, or in any manner, when done with the deliberate design to effect the death of the person killed, and not in necessary self-defense,'' and in the oral argument before this court counsel for the appellant challenged the correctness of this instruction; the contention being that the phrase, ''not in necessary self-defense,'' excludes the doctrine of apparent necessity or danger, and limits the right of self-defense to cases of actual or real danger and necessity. We do not think there is any merit in this contention. The phrase, ''necessary self-defense,'' does not exclude the consideration of apparent necessity, but as used in our statutes and as generally understood it includes every case ''where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished,'' and it has been said by this court that in such case one may justifiably slay another, ''if he acts conscientiously upon reasonable fears, founded on present overt acts, to all appearances hostile, although there be really no actual danger at the time.'' *Bang* v. *State,* 60 Miss. 571.

The judgment of the court below will therefore be affirmed, and Friday, January 9, 1925, is fixed as the date for the execution of the sentence.

*Affirmed.*

Anderson and Holden, JJ., dissent.

Holden, J. (dissenting).

Judge Anderson and I dissent from the affirming opinion on the ground that the uncontradicted evidence in

the case shows the appellant was guilty of no greater crime than manslaughter. The undisputed facts in the record show the appellant was being advanced upon by the deceased and another white man for the purpose of assault, and that the appellant backed away from them about fifty feet into the middle of the street. While so backing from them, and while they were advancing upon him, he repeatedly told them to stop. Page 14 of the record discloses the undisputed testimony in the following words:

"Q. All right, when the white man started towards Clinton what did Clinton do? A. He backed up, and told him not to come on him."

At another point it is shown without dispute that the appellant backed away some forty or fifty feet, and warned the deceased to stop, but the deceased continued to advance, whereupon the appellant fired the fatal shot. All witnesses to testify. Under this proof the appellant could be guilty only of manslaughter, if guilty at all, under the *Williams Case,* 120 Miss. 604, 82 So. 318; *Williams* v. *State,* 121 Miss. 433, 84 So. 8, in which it is held that where the deceased shot to prevent an assault it could be no more than manslaughter. Also see the recent case of *Williams* v. *State,* 127 Miss. 851, 90 So. 705.

The record in this case further shows the appellant shot the deceased as the result of a sudden difficulty brought about through a controversy about the collection for a load of wood. The parties were strangers before they met on this occasion. The appellant did not arm himself after the quarrel, but he armed himself before the parties had any dispute or hot words, and even before they had spoken angrily to each other. Under this phase of the proof it was a killing in the heat of passion upon sudden provocation, and not a premeditated homicide. The cases I have cited are in point, and ought to be followed, or overruled, by the majority herein.