WOODS *v.* STATE.

(Division B.   Oct. 10, 1938.)

[183 So. 508.   No. 33312.]

136

(Nov. 7, 1938.)

[184 So. 311.]

**Engle & Laub,** of Natchez, for appellant.

138

**Engle & Laub**, of Natchez, for appellant on Suggestion of Error.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

**McGehee, J.,** delivered the opinion of the court.

The appellant, Lucille Woods, and Janie Allen, were jointly indicted for the murder of one Theodore Lewis, in the Circuit Court of Adams County. The appellant obtained a severance and was convicted of manslaughter.

She urges two grounds for a reversal of the case: (1) That the court below erred in overruling her application for a continuance of the cause to a later day in the term, and (2) in giving the following instruction on behalf of the State: "The Court Instructs the Jury for the State that if the Jury believe beyond a reasonable doubt from the evidence in this case that the defendant Lucille Woods and Janie Allen, alias Shorty, wrongfully had their minds made up prior to the time of the killing to wilfully, feloniously, unlawfully and maliciously kill and murder the deceased, Theodore Lewis, alias Son Tyler, and that armed with a knife for such purpose, they followed the deceased several blocks to his home, intending to carry out such unlawful purpose so formed in their minds and that, so armed and with such unlawful purpose in their minds and with the purpose of carrying out such intent on their part, to wrongfully, wilfully, maliciously, feloniously and of their malice aforethought kill and murder said deceased, attacked deceased and Lucille Woods so killed him, and that they, at no time prior to the time of the actual killing of the deceased, abandoned such purpose, then, and in that event, Lucille Woods would not be entitled to set up any act or conduct of the deceased either before or at the time of the killing by way of defense of such killing."

Considering first the continuance applied for, we find that the appellant was indicted and arrested on March 28, 1938. Being without means to employ an attorney to defend her, the court appointed two members of the local bar on April 4, 1938, for that purpose. She was thereupon arraigned, while one of her attorneys was present in court. The other attorney was advised of his appointment on the next morning, and they obtained a severance for the appellant and filed a motion for a special venire. The special venire was ordered to be drawn, and the case was passed until two o'clock in the afternoon of that day, as stated in the record by the trial judge, in order that the attorneys might confer with

the appellant and others and make an announcement. During the afternoon, the special venire was drawn, without any request for further time being made by the attorneys for the purpose of enabling them to further confer with their client, and the case was set for trial for the morning of April 8th, and the venire was summoned to appear at that time. When the case came on for trial, the application was made for a continuance until a later day in the term, on account of the absence of Dr. H. F. Fridge, who had been formerly employed at the Natchez Charity Hospital, and who was alleged to have treated the appellant, within a few hours after the killing of the deceased, for a fresh wound caused by being stabbed by a sharp instrument, "probably an ice pick," and who was not known by the attorneys to have left the city and moved to Hattiesburg, Mississippi, until after the special venire was drawn. The application further averred that appellant was unable to prove by other defense witnesses the same facts that would be testified to by the said Dr. H. F. Fridge. On the hearing of the application for continuance, the State introduced Robert Burn, a police patrolman, who carried the appellant to the Natchez Charity Hospital at about 7:30 A. M. after the killing on the night before, and testified that she had received the wound at the place on her body where Dr. Fridge is alleged to have found the same; that she had blood on her dress on the inside, down in front, and that the wound was then bleeding; that he was unable to tell whether or not the wound had been inflicted by an ice pick; that she had been arrested about 1 o'clock on that morning and had no access to an ice pick or other weapon between the time she was locked up and the time she was carried to the hospital; that he went with her to the hospital three or four times in all; that she was treated each time by Dr. Fridge; and that the doctor found that the wound did not go into the lung. The witness Burn was not called by either side as a witness except at the hearing of this application for continuance,

and he does not appear to have had any interest in the case except to state the truth as to what he had observed. His testimony was undisputed, and in our opinion it afforded the appellant the means of establishing the fact that she had the fresh wound which Dr. Fridge is alleged to have treated. The availability of this testimony for the trial on the merits, and the fact that no further time was requested by her attorneys for a conference with her at the time the venire was drawn, we think justified the trial court in overruling the application for a continuance. The record shows that the special venire was drawn and summoned upon the application of the appellant, and it is not an abuse of discretion to deny a continuance after the expense of summoning a special venire has been incurred and the veniremen have appeared in court, where there are no intervening circumstances or events transpiring between the drawing of the venire and the date set for trial.

The instruction complained of, which deprives the defendant of the plea of self-defense should never be given except where the proof on behalf of the State clearly shows that the defendant, armed with a deadly weapon for the purpose, becomes the aggressor in a difficulty in regard to which the plea is invoked, but we are of the opinion that the foregoing instruction contains these necessary elements and that the testimony offered by the State, which the jury adopted as true, justified the giving of the instruction in this particular case. The jury was warranted in believing, beyond a reasonable doubt, that the appellant drew a knife and attempted to engage in a difficulty with another woman at the place of business of one Louis Sabine on the night of the killing when she found her in the company of the deceased; and that after the deceased and this other woman left the scene to avoid further trouble, the appellant followed them for nearly a mile to the house where they were living together, and thereupon called the deceased out of the house into the alley and stabbed him to death; and

the jury was also warranted in finding from the evidence that even though the appellant may have been stabbed with some instrument at the time of the killing, it occurred while she was advancing on the deceased with her knife to kill him.

We find no error in the record that would justify a reversal of the case.

Affirmed.

### On Suggestion of Error.

**McGehee, J.,** delivered the opinion of the court on Suggestion of Error.

It is urged on suggestion of error that the former opinion in this case is in conflict with the opinion of the court in the case of Vance v. State, Miss., 183 So. 280, in that in the Vance Case the court condemned the giving of an instruction which deprived Vance of the right of self-defense under the circumstances therein recited, and that the court upheld a similar instruction in the case at bar, quoted in the former opinion in this cause. The instructions are in fact of similar import and meaning. However, in the Vance Case there was no proof that he armed himself with the pistol for the purpose of provoking the difficulty with the deceased and using the weapon if necessary to overcome him, but according to the evidence, as pointed out by the court in the opinion, Vance neither knew at the time he armed himself with the weapon that he would encounter the deceased while so armed, nor did he intend to seek out the deceased for the purpose of provoking the difficulty with him. The instruction was held to be erroneous because of the absence of any evidence on which the jury could find that Vance had any such intention in arming himself; whereas, in the case at bar the proof disclosed that the appellant left the place of one Louis Sabine on the night of the killing armed with a knife, saying at the time that she was going to kill the deceased, and followed him nearly a mile between one or two o'clock in

the morning, and cut him to death with such weapon in a difficulty wherein the proof on behalf of the State showed her to be the aggressor, and at a time when two or more witnesses say he was asking her not to come on up to him. If a person provokes a difficulty, armed in advance, intending, if necessary, to use his weapon to overcome his adversary, he thereby deprives himself of the right of self-defense. Helm v. State, 67 Miss. 562, 7 So. 487; Prine v. State, 73 Miss. 838, 19 So. 711. While it is true that it is a rare case in which this instruction is proper, it has been upheld in numerous cases when the facts necessary to sustain it are in evidence. Assuming that the appellant was accustomed to carry the knife which was used in slaying the deceased, if while armed with it she followed and apprehended the deceased after he had left the Sabine Store for the purpose of avoiding further trouble, and provoked a difficulty with him, being the aggressor, and intending all the while to use such weapon if necessary to overcome him, we see no reason why the same rule would not apply as would have been the case if she had procured the knife from elsewhere for such purpose. Otherwise, a person who continually carries a deadly weapon would never be subject to the rule which deprives others of the right of self-defense when they arm themselves and provoke a difficulty, and become the aggressor, intending to use the weapon to overcome their adversary.

It is next insisted that in the Vance Case the court held that an instruction was harmful which told the jury that unless it be reasonably necessary to shoot an adversary in order to save the defendant from great bodily harm or to save the life of the individual who fires the shot "at the very time the fatal shot was fired" and that in the case at bar the court in its original opinion upheld a similar instruction. Responding to the contention that the two decisions are in conflict in this respect, it should be stated that the objection to this instruction in the case at bar was not directed did not

in the original briefs to the language above quoted, but the objection to the instruction was based on other grounds. Moran v. State, 137 Miss. 435, 102 So. 388. Moreover, the opinion in the Vance Case stated that "under all the evidence as to what occurred in the store during the difficulty, the phrase 'at the very time the fatal shot was fired' circumscribed the right of self-defense within too narrow limits, and has been in principle heretofore disapproved by this court. See Fortenberry v. State, 55 Miss. 403; Ellerbe v. State, 79 Miss. 10, 30 So. 57; Bang v. State, 60 Miss. 571; Dyson v. State, 26 Miss. 362; Case v. State, Miss., 17 So. 379. It was as harmful in this case." The giving of this instruction was not held to be reversible error in the Vance Case but was merely held to have been harmful under the circumstances of that particular case. The Vance Case was reversed primarily because of the giving of the instruction which deprived him of the right of self-defense under the circumstances shown by the record in that case. Moreover, the cases last above cited in the Vance Case condemned similar instructions on the ground that there was omitted therefrom the element of apparent danger, and in effect told the jury to convict the defendant unless he was in actual danger at the very moment the fatal shot was fired. This element was not lacking in the instruction in the Vance Case, as it is not lacking in the present case, but the instruction in that case was held "harmful" in view of all of the evidence as to what occurred in the store during the difficulty in which Vance slew the deceased Harrington. We do not think that the giving of this instruction constituted reversible error in the present case in view of the difference existing between the facts and circumstances testified to in the two cases.

In view of the statement of counsel that the opinion in the Vance Case was not published until after their original brief was written, and because of the fact that counsel now representing the appellant on this appeal

appear for her in the court below, and no motion for a new trial having been made in the court below, we have carefully re-examined the record both in relation to the point not heretofore argued as error in one of the instructions complained of, as well as those previously emphasized in the briefs, and we are unable to see that there is any conflict in the two decisions when viewed in the light of their different facts and circumstances. It frequently occurs that the giving of instructions in substantially the same language may be held to constitute reversible error in one case, and be upheld as justified by the facts in another case.

Nor do we feel that we would be justified in not adhering to the former opinion, wherein we held that there was no abuse of the trial court's discretion in denying the application for continuance. The record on the hearing of such application shows that the fact proposed to be proved by Dr. Fridge, if present, could have been established by the undisputed testimony of a police officer. The extent of the wound alleged to have been received by the appellant in the difficulty we think was immaterial, if the jury believed that the deceased was using, or attempting to use, an ice-pick or other sharp instrument, not in his necessary self-defense, at the time she killed him. As suggested by the district attorney at the hearing, the hospital records would have disclosed the fact that the appellant was treated for the wound in question on the next morning, in corroboration of the testimony of the police officer. If the suggested and available proof had been made on the trial, we do not think it reasonable to suppose that the jury would have taken the view that the wound was self-inflicted. Neither the absent witness nor the police officer could have testified that it was received in the difficulty wherein the appellant killed the deceased.

After a full review of the record and consideration of the questions argued, we do not find that any reversible error was committed.

Suggestion of error overruled.