IRBY *v.* STATE.

(Division A. Jan. 23, 1939.)

[185 So. 812. No. 33336.]

J. V. Gipson and Gilbert & Cameron, all of Meridian, for appellant.

Russell Wright, Assistant Attorney-General, for the State.

Briefs of counsel not found.

Argued orally by C. B. Cameron, for appellant, and by Russell Wright, for the State.

Smith, C. J., delivered the opinion of the court.

The appellant was indicted for murder and convicted of manslaughter. He complains of the introduction of evidence and of the granting and refusal of instructions to the jury.

Sam Irby, the appellant's father, was possessed of a building abutting a highway near Meridian, in which there were several rooms. In one room he sold beer and soft drinks, and in another conducted a dance hall. The entrance from the highway was into the room where the beer was sold, and from that, by a connecting door, into the dance hall. He used the other rooms of the building as a residence, and the appellant and another son, John Irby, lived with him and assisted him in the business there conducted.

On December 24th, 1937, around one o'clock A. M., Will Carlisle, and other men and women, were in the dance hall. These men were drinking intoxicating liquor, and, according to the evidence for the appellant, were drunk. The evidence warranted the jury in believing that Carlisle was guilty of disorderly conduct in the dance hall, and that thereafter he left the dance hall, went into the beer room, and was standing at the door thereof leading out of the building and to the highway. The state, over the objection of the appellant, introduced

evidence that John Irby then struck Carlisle with a short iron instrument, designated as a link, and knocked him out of the door. A link, said to be the one used by John, was introduced in evidence, and also evidence that on a former day John had a link in his possession similar to the one with which he struck Carlisle. After striking Carlisle, John went to the rear of the beer room. The appellant was in the dance hall when this occurred, but immediately thereafter entered the beer room and went to the door from it to the highway, according to his testimony, to answer a call from the highway for curb service. According to the evidence of the appellant he did not know that John had struck Carlisle, and the contrary does not appear from the state's evidence, nor does any evidence of a conspiracy by John and the appellant to assault Carlisle appear.

When Carlisle was knocked out of the door by John, he walked a few steps therefrom, returned to the door, and met the appellant either in or just outside of the door. A fight between them then occurred. Which was the aggressor does not appear from the state's evidence. The appellant knocked Carlisle down two or three times during this fight. John appeared after the fight had begun and participated therein.. When Carlisle fell the last time, he lay on, or partly on, a cement pavement, his head being thereon, and both John and the appellant continued to beat him and, in the language of the witness, to "stomp" him on the head. The appellant, who then had several knife cuts on his body, procured an automobile, had Carlisle placed on the back seat thereof, and drove the automobile into Meridian, collided with a telephone post, caused, according to his evidence, in avoiding a collision with another automobile, resulting in the automobile's being partially wrecked. He was assisted therefrom by a person, who happened to be near, and carried to a hospital. Carlisle's body was then taken from the automobile and carried to an undertaker's establishment. The jury were warranted in believing that

Carlisle was dead when put into the automobile at the place of the fight.

The appellant's evidence was to the effect that Carlisle made an unprovoked assault on him with a knife, and that he simply defended himself therefrom, and that he did not strike Carlisle after he had fallen.

1. The evidence of the assault made by John Irby on Carlisle prior to the fight between the appellant and Carlisle should not have been admitted in evidence. The appellant is not shown to have been in any way a party thereto or to have known thereof at the time of his difficulty with Carlisle. While near in point of time to the difficulty between the appellant and Carlisle, it was no part thereof, was strictly res inter alios acta, and the appellant cannot be charged therewith. The attorney general says that the evidence of one of the witnesses discloses that the appellant assisted John in making this first assault on Carlisle, but it is clear from the evidence of the witness referred to that he did not see this assault and his attention was attracted to the matter after the difficulty between Carlisle and the appellant had begun.

2. Over the objection of the appellant, the state proved that the automobile procured by the appellant, for transporting himself and Carlisle to a hospital, was owned by a stranger who had parked it at Sam Irby's place of business some months before, had never returned for it; that the appellant had appropriated it to his own use, and used it on this occasion instead of an automobile belonging to his father, which was parked nearby. This evidence has no bearing on the guilt vel non of the appellant, may have caused the jury to believe that he was guilty of another crime—theft, and, whether intended for that purpose or not, lent color to the state's examination of witnesses, who saw the wreck of the automobile, tending to show that it was brought about purposely by the appellant, from which the jury could have inferred that his purpose in so doing was to make it appear that Carlisle was killed in the wreck.

3. According to the state's evidence during the fight between the appellant and Carlisle, Mrs. Tillman ap-

peared and said that she would get him (Carlisle) off if they would let him alone. The appellant then either knocked or shoved her down. It does not appear whether this was done by the appellant intentionally or not, but no error was committed in permitting the introduction of the evidence.

4. The clothing worn by the appellant at the time of his difficulty with Carlisle was in the possession of his father, and had been placed by him, the next day after this difficulty, in the appellant's room at the father's residence. While testifying for the appellant, his father was requested by the district attorney to get these shoes at the court's next recess, and to bring them to the courthouse. This he did and produced the shoes which disclosed that the heel to one of them was missing. This was objected to as being an unlawful search and seizure. If any error was committed by the introduction of this evidence, it was cured when the appellant himself afterwards identified the shoes as being the ones he wore on the night of the difficulty, and said that the heel was then on the shoe, but was not there the next morning when he awoke in jail. This evidence bore on the state's claim that the appellant had "stomped" Carlisle after he was down.

5. While Sam Irby, the appellant's father, was testifying he was examined at great length over the appellant's objection, as to conversations he had had with the appellant, and reported to the district attorney. The evidence thus obtained did not disclose any confession or admission of guilt, but only that the appellant had told his father that he wished to make a statement to the district attorney. This evidence should not have been admitted.

6. No error was committed in permitting the state to prove by a nurse that while at the hospital the appellant cursed Carlisle and said if he was not dead he would kill him, and the error, if any, in the voluntary statement of this nurse that the appellant then said "that he was going to hell anyway, and that he did not believe in heaven," was cured by the court's exclusion of it from the

evidence. No error was committed in refusing the appellant's request for a directed verdict of not guilty, and for an instruction that he could not be convicted in any event of more than manslaughter.

7. The following instructions to the jury are challenged:

"The Court further charges you for the State that if a person dies from an injury unlawfully inflicted by another, the person inflicting such injury is responsible for the death, if such injury was either the sole cause of death, or was the partial cause of death, or contributed to the death of the person injured. And so, in this case, even if you are unable to determine whether the affray, if any, in question was the sole cause of death, or whether the wreck, if any, contributed thereto; still, such fact, alone, does not relieve the defendant of responsibility, herein, if you further believe from all the evidence beyond a reasonable doubt that the injuries, if any, inflicted in an affray, by the defendant, Maurice Irby, if he did so inflict them, either partially caused or contributed to the death of Will Carlisle; and this is true even if the wreck, if any, in question, also contributed thereto." This instruction seems to have been intended to charge the jury that if the appellant inflicted injuries upon Carlisle in an attempt to kill him under circumstances that would render him guilty of either murder or manslaughter, which contributed to Carlisle's death, he would not be relieved from the guilt thereof even though another independent cause contributed thereto. The instruction is involved and somewhat difficult to understand. Two errors, however, appear therein; first, the use of the word "unlawfully;" and second, the ignoring therein of the appellant's claim that he acted in self-defense. Every injury unlawfully inflicted by one on another causing his death does not present a case of either murder or manslaughter. The unlawfulness of the injury must be within the definition of one of those two crimes. This instruction by itself alone might not constitute reversible error.

"The court instructs you for the state that the killing of a human being in the heat of passion, without malice and without authority of law, and not in necessary self-defense either real or reasonably apparent by the act, procurement or culpable negligence of another and without authority of law is manslaughter, and in this case if you believe from all the evidence beyond a reasonable doubt that the said Maurice Irby either so killed or in any way contributed to or hastened the death of Will Carlisle or was present, aiding, abetting, and assisting in so doing, then it is your sworn duty to find the defendant Maurice Irby guilty of manslaughter." The vice of this instruction is its use of the words "culpable negligence," and the words "in any way contributed to or hastened the death of Will Carlisle." The evidence discloses no negligence of any sort on the part of the appellant but intentional acts, the quality of which determines his guilt or innocence.

"The court charges you for the state that great bodily harm sufficient to justify killing, does not mean mere slight bruises inflicted by hands and fist, and that a mere imaginary danger of great bodily harm, or death, neither real nor reasonably apparent, is not sufficient to avail the defendant of the plea of self-defense on the grounds of imminent and impending danger." There is no evidence on which to base this instruction for the appellant's injuries were not "slight bruises, inflicted by hands and fists," but were unquestionably, on this record, inflicted by a knife or other sharp instrument.

An instruction for the state charged the jury that the appellant was justified only in slaying Carlisle in order to save himself "from great bodily harm at the very time of the fatal blow." This was error. The danger must be imminent and impending, but not necessarily at the very instant the fatal blow is struck.

Whether the error in each of these instructions by itself alone would necessitate a reversal, we are not called on to decide.

If any error appears, as to which we express no opinion, in the instructions defining murder, the appellant cannot complain thereat since he was convicted only of manslaughter.

Reversed and remanded.