## DAVIS *v.* STATE.

May 3, 1954

No. 39161 63 Adv. S. 5 72 So. 2d 172

*R. G. Livingston,* Prentiss; *Sebe Dale, Jr.,* Columbia, for appellant.

*Wm. E. Cresswell,* Asst. Atty. Gen., Jackson, for appellee.

McGᴇʜᴇᴇ, C. J.

The appellant, John Henry Davis, was convicted of the murder of his 21-year-old son, Frank Davis, and sentenced to life imprisonment. On this appeal he assigns as error (1) that he was refused a directed verdict in his favor, (2) that in any event the trial court should not have submitted to the jury the question of whether the homicide amounted to murder instead of limiting the issue to manslaughter or an accidental killing, and (3) that certain instructions granted the State constituted reversible error as being prejudicial to the defendant.

The proof on behalf of the State disclosed that the father assaulted the son by striking him at a time when

the father had an open knife in his hand; that they then clenched and the father was thrown to the floor by the son and when they were separated it was found that the son had been fatally stabbed with the knife in his left breast, as a result of which death soon followed.

The proof on behalf of the State further disclosed that the son had married about three weeks prior to the homicide and that he and his wife were living in the home of the appellant and his wife; that the killing occurred on January 10, 1953, after the father and son had agreed to make a crop during that year on the farm of Mr. Sedgie Bourn in Jefferson Davis County; that Mr. Bourn had shortly prior thereto advanced some money for the account of the son and the appellant had likewise advanced him the sum of $8.75 or $10.75; that on the night of the homicide the son and his wife had planned to move from the home of the appellant to work elsewhere during that year; that he had just returned from the home of Mr. Bourn where he returned to him the amount of money that had been advanced, and upon returning that night to the home of his father the latter had become advised that the son and his wife were then preparing to move their personal effects from his house on that night to some other place of abode and the father demanded that his son pay him the amount due before he left; that the son explained that he didn't have enough money to pay both Mr. Bourn and his father but promised to pay to his father what he owed him as soon as he could, and the father then demanded that the son leave his Sunday clothes at the home of his father until he raised the money and returned and paid the father what he owed him; that during the quarrel about this money matter the father slapped his son with one hand and cut him on the back of his neck with the knife, making only a superficial wound; and that they then clenched and fell to the floor with the son on top of his father, and when the son got up he had been fatally stabbed in the left breast with the

knife. No one claimed that the deceased was making any attempt to do his father bodily harm at the time he was slapped by the latter and cut on the neck with the knife before he threw his father to the floor.

The appellant and his wife testified that their son called his father "a liar" and also a "black son-of-a-bitch" before the latter is alleged to have slapped and cut his son.

None of the three State witnesses who were present when the altercation started had heard either of these epithets uttered by the son. They denied that any cursing was done, and testified that the father and son were merely arguing prior to the altercation, and that the son had displayed no weapon or attempted to molest his father. The defendant further contended that when he and his son clenched, and while his son was throwing him to the floor, they fell over a "crippled" chair and that the son fell on the open knife then being held in the hand of the father and got cut in the left breast as a result thereof.

The sheriff testified that the appellant's wife had stated to him that she was in the kitchen when the cutting occurred in the living room, contrary to her testimony at the trial. The officers also identified a written statement of the accused, which was introduced in evidence, and in which the accused stated, among other things, that "I intended to cut him (Frank Davis), but did not intend to kill him." Although the defendant claimed at the trial that his son Frank Davis fell on the knife and was accidentally, instead of intentionally, cut, there was evidence introduced on behalf of the defendant as to two previous altercations between him and his son, and wherein his son was alleged to have been the aggressor and got the best of the encounters. Such proof would throw some light on who was the aggressor, and as to the existence of real or apparent danger, under a plea of self-defense, and instructions were obtained both on behalf of the State

and the defendant upon the theory that there was an issue of self-defense in the case. And having reached the conclusion that under the facts hereinbefore stated the defendant was not entitled to a directed verdict on the issue of murder, and that the case should have been submitted to the jury under proper instructions as to whether he was guilty of murder or manslaughter, or should have been acquitted upon his theory of accidental death, we now proceed to examine two of the instructions granted in favor of the State which are assigned as error.

The first of these instructions reads as follows: "The court instructs the jury for the State that if you believe from the testimony in this case, beyond a reasonable doubt, that on or about the 10th day of January, 1953, in Jefferson Davis County, Mississippi, the defendant and the deceased, in the defendant's residence, had an argument about money matters, and that the defendant then willfully, unlawfully, and feloniously struck and cut the deceased, Frank Davis, or willfully, unlawfully, and feloniously grabbed hold of or bear-hugged the deceased at a time when the said defendant, John Henry Davis, had a knife in his hand and at a time when the deceased was making no overt act towards the defendant and if you further believe beyond a reasonable doubt from the evidence in this case that the defendant willfully, unlawfully, and feloniously struck or cut the deceased, or grabbed hold of him or bear-hugged him, in the manner as aforesaid without authority of law, and not in necessary self-defense, and that the defendant thereby unlawfully and feloniously caused the deceased to fall onto a knife that was in the defendant's hand at said time and thereby stab or wound the deceased in his left breast, and that the said deceased died as a result thereof, then you should find the defendant guilty as charged in the indictment, and the form of your verdict should be, 'We, the jury, find the defendant guilty as charged in the indictment.' "

■■■ The appellant complains of this instruction on two specific grounds, first, that it omits therefrom the words "with malice aforethought," or their equivalent; and, second, that the instruction eliminates the crime of manslaughter from the consideration of the jury. It was error to omit from this instruction the words "with malice aforethought," an essential element of the crime of murder. While it is true that the State obtained two other instructions which required the jury to believe that the accused acted with malice aforethought before he could be convicted of the crime of murder, we are of the opinion that since the defendant obtained no instruction that cured this vital error in the instruction hereinbefore quoted, and in view of the fact that it was the main instruction obtained by the State informing the jury the basis upon which it could predicate a verdict of conviction, the omission of the words "with malice aforethought" was error notwithstanding the other instructions obtained by the State.

However, the more serious defect appearing in this instruction is the fact that it authorized the jury to convict the defendant of murder if they believed from the evidence beyond every reasonable doubt that he either willfully, unlawfully and feloniously struck or cut the deceased "or grabbed hold of him or bear-hugged him, in the manner as aforesaid (that is to say while the accused had a knife in his hand and at a time when the deceased was making no overt act towards the defendant) without authority of law, and not in necessary self-defense, and * * * caused the deceased to fall onto a knife that was in the defendant's hand at said time and thereby stab or wound the deceased in his left breast, and that said deceased died as a result thereof," the jury should return the following verdict, "We, the jury, find the defendant guilty as charged in the indictment."

In our opinion the language above quoted had the effect of peremptorily instructing the jury that if it be-

lieved the defendant's version of what occurred then the jury should convict him of murder. It destroyed his right to have the jury pass upon the question of whether or not he was guilty of manslaughter by reason of culpable negligence in assaulting the deceased and going into a clench with him with an open knife in his hand, which he claimed to have been using immediately prior thereto in whittling on a stick, and also whether he was guilty of manslaughter upon the theory that the killing may have been done without malice aforethought in the heat of passion, without authority of law, and not in necessary self-defense. In other words, if the jury had believed that the defendant willfully cut and killed the deceased under the facts and circumstances testified to on behalf of the State, as allegedly admitted to the officers by the defendant, the jury had a right to convict him of murder if they believed that it was done with malice aforethought or of the crime of manslaughter, if they believed it was done without malice, in the heat of passion, without authority of law, and not in necessary self-defense. In fact, the jury had the legal right to find that the homicide was accidental if they believed from the evidence that when the defendant was thrown to the floor the knife was unintentionally held in such an upright position as to cause the deceased to be accidentally cut or stabbed in his left breast in the manner testified to, unless the jury should have further believed from the evidence beyond a reasonable doubt that the defendant was nevertheless guilty of culpable negligence to such an extent as to be guilty of the crime of manslaughter.

The second instruction complained of reads as follows: "The court instructs the jury for the State that the law tolerates no excuse and accounts no justification for the taking of human life upon the plea of self-defense, unless it be reasonably necessary to save the slayer's life, or to save him from great bodily harm at the very instant of the fatal cutting or stabbing. And in this case, if you

believe from the evidence beyond a reasonable doubt, that the defendant, John Henry Davis, fatally cut or stabbed Frank Davis at a time when John Henry Davis was not in any immediate danger, real or apparent, of losing his life or suffering great bodily harm at the hands of Frank Davis, then the defendant is guilty of murder or manslaughter; murder if he acted of his malice aforethought, and manslaughter if he acted without malice.''

 It was error to use in the instruction the words ''at the very instant of the fatal cutting or stabbing.'' This instruction was condemned and held to be harmful to the accused in the cases of Irby v. State, 186 Miss. 161, 185 So. 812; Vance v. State, 182 Miss. 840, 183 So. 280, and the previous decisions of this Court cited in the Vance case. In the Irby and Vance cases, supra, the objection was that the instruction required the jury to believe that the defendant must believe himself to be in danger of losing his life or suffering great bodily harm ''at the very time'' of the killing. Whereas the words objected to in the instruction in the instant case restricts the right of self-defense to a greater extent by requiring the defendant to act upon a belief of either real or apparent danger ''at the very instant'' of the fatal blow.

It is true that in the case of Woods v. State, 183 Miss. 135, 184 So. 311, this Court declined to reverse the conviction because of the use of a similar instruction by the State and pointed out in an opinion on the suggestion of error that while the Court had held such an instruction to be harmful in the Vance case, the reversal of that case was based primarily upon another instruction therein discussed. And further that the instruction was held to be harmful on the basis of all of the evidence as to what occurred in Vance's store during the difficulty with the officer whom he killed.

Therefore, it seems that there may be cases based on such facts and circumstances as not to justify a reversal of a conviction on the sole ground of the giving of an

instruction such as the one hereinbefore last quoted. But it is further true that in the majority of homicide cases such an instruction is likely to be held to be reversible error. The State should refrain from obtaining such an instruction whereby so great a risk is incurred of the same being held to restrict the right of self-defense within too narrow limits and to constitute reversible error. It is unnecessary for us to decide whether or not we should reverse the instant case solely on the ground of the giving of this instruction since the case should be reversed primarily because of the giving of the first instruction hereinbefore quoted. Cf. Marshall v. State, No. 39119, this day affirmed, but wherein the instruction was similar in some respects but contained the words "prior to, or at the time the cutting and stabbing was done * * *," the words "prior to, or" having saved it from the defect herein discussed.

We regret the necessity of having to order a new trial but we are left no other alternative in the case at bar.

Reversed and remanded.

*Hall, Kyle, Holmes* and *Gillespie, JJ.,* concur.