MARSHALL *v.* STATE.

May 3, 1954

No. 39119 63 Adv. S. 32 72 So. 2d 169

*Bodron & Nichols,* Vicksburg, for appellant.

*Joe T. Patterson,* Asst. Atty. Gen., Jackson, for appellee.

KYLE, J.

The appellant, Arthur James Marshall, whose nickname is "June," was indicted on a charge of murder in the killing of Rush Givens, Jr., and was tried and convicted of manslaughter. He was sentenced to imprisonment in the state penitentiary for a term of five years, and from that judgment he prosecutes this appeal.

The homicide occurred during the afternoon of May 1, 1953, in Mahala Marshall's yard on Valley Street, in the City of Vicksburg, and the death wound was inflicted by stabbing with a kitchen knife. Mahala was in the yard when the fatal stabbing occurred. Mahala, who was a sister-in-law of the appellant, testified as the chief witness for the State. Mahala testified that she had the kitchen knife in her hand and was preparing to clean a fish at the time the appellant and Rush Givens walked into the yard. The appellant handed her his pay check and requested her to look at it, and while she was looking

at the check the appellant took the knife out of her hand and stabbed the deceased and as he did so she heard him say, "You have beat me and knocked me down all day long." When she heard that statement, she looked up from the check, "and about that time June struck at him." Mahala stated that she reached for the appellant's arm, but it was too late. She then caught the appellant and was trying to push him back upon the porch, when she saw the deceased coming up on the appellant with a shovel in his hand. Mahala called to Clemmie Rucker who was in the house, and Clemmie came out and took hold of the deceased as the deceased dropped the shovel on the steps.

Clemmie Rucker testified that when he went to the door, Rush was coming up on the porch, and that Rush said to him, "Do something for me." The deceased was stabbed in the throat and was bleeding badly. Clemmie called an ambulance and carried him to the hospital, where he died a few minutes later.

According to the testimony of the appellant and the appellant's witnesses, the appellant and the deceased had met during the morning at the Veto Street Cafe, in the City of Vicksburg. The deceased requested the appellant to purchase for him a pint of wine. The appellant declined to do so, and the deceased struck him. The appellant then purchased the pint of wine, and he and the appellant drank it. The deceased then requested the appellant to purchase another pint of wine, and when the appellant declined to do so, the deceased again struck him. The appellant then borrowed a nickel from the bar maid and purchased another pint of wine, and the appellant and the deceased drank that pint together. The appellant left the bar and went to the place where he was employed to get his pay check. The deceased followed him. While they were waiting for the pay check, an argument took place between them concerning a sum of money which the deceased claimed that appellant owed him. After the appellant had received his pay check, the

two men got into a truck and proceeded toward their home. The deceased insisted upon the appellant getting his pay check cashed, but the appellant declined to have the check cashed, and another argument ensued. The deceased threatened to whip the appellant every time he saw him. They got out of the truck about two blocks from the place where the appellant lived, and walked to the appellant's home. When they entered the yard the appellant handed his pay check to Mahala Marshall, who was standing in the yard with a kitchen knife in her hand.

The appellant testified that when he handed Mahala the check and turned around, the deceased hit him with his fist, and as the appellant moved back, the deceased picked up a shovel and started toward him. The appellant stated that he then took the butcher knife from Mahala's hand and stabbed the deceased.

The first point argued by the appellant's attorney as ground for reversal on this appeal is that the court erred in refusing to grant the peremptory instruction requested by the appellant. It is contended on behalf of the appellant that the appellant was the only eyewitness to the stabbing, and that his version of the facts concerning the stabbing should have been accepted under the rule laid down by this Court in Weathersby v. State, 165 Miss. 207, 147 So. 481, in which the Court said: "It has been for some time the established rule in this state that where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge."

But we think the rule laid down in the Weathersby case has no application to the facts in this case. Mahala Marshall was present during the fatal encounter and testified as a witness concerning most of the details of the killing. Mahala contradicted in material particulars the appellant's version of the killing. It is true that she

testified that she was looking at the check at the time the appellant took the knife out of her hand, and that just before she looked up she didn't see either the appellant or the deceased. But she stated that she looked up when the appellant took the knife from her hand, and saw the appellant thrust his hand toward the deceased. She stated that at the time the appellant stabbed the deceased, one of the deceased's hands was by his side; she did not know where the other hand was; she did not see anything in either hand. After the appellant had thrust his hand with the knife in it toward the deceased, she tried to push him back upon the porch, and when she looked back the deceased had the shovel, "looking like he was going to strike." The appellant testified that the deceased hit at him with the shovel before he picked up the knife. It is only in a rare case of this kind that an eyewitness can see and remember all of the details of the fatal encounter. But it is clear from what has been said that Mahala's version of the facts concerning the details of the stabbing differs materially from that given by the appellant. The inferences that might be drawn from the testimony were conflicting. ▮▮■ The question as to the appellant's guilt was therefore properly left to the jury to decide.

It is next argued that the court erred in granting the fourth instruction for the State. That instruction is as follows:

"The Court further instructs the Jury for the State, that the law tolerates no excuse and accepts no justification for the cutting, stabbing and killing of one individual by another upon a plea of self-defense, unless it be reasonably necessary or apparently necessary so to do, in order to save the life of the individual who did the cutting and stabbing, or to save him from some great bodily harm prior to, or at the time the cutting and stabbing was done that inflicted the wound; and, in this case, if you believe from all the evidence, beyond a reasonable doubt, that the Defendant, Arthur James Mar-

shall, in Warren County, State of Mississippi, did, then and there wilfully, unlawfully, feloniously and of his malice aforethought cut, stab and kill one, Rush Givens, Jr., a human being, at a time when he, the said Arthur James Marshall, was not in any immediate danger, real or apparent, of losing his life, or suffering some great bodily harm at the hands of the said Rush Givens, Jr., then the Defendant is guilty as charged in the indictment, and it is the sworn duty of the Jury to so find."

 The appellant contends that the above mentioned instruction was erroneous in that it unduly limited and circumscribed the appellant's right of self defense; and the appellant cites in support of his contention the cases of Case v. State (Miss.), 17 So. 379; Vance v. State, 182 Miss. 840, 183 So. 280; and Irby v. State, 186 Miss. 161, 185 So. 812. But the language used in the instruction complained of in this case differs from the language used in the instructions granted in the cases cited above. The words used in Case v. State, supra, which the Court said unduly narrowed the right of self defense were the words, "at the very moment when Magee was making no hostile demonstration." The words used in Vance v. State, supra, which the court disapproved were the words, "at the very time the fatal shot was fired." The instruction in Irby v. State, supra, which the court condemned charged the jury that the appellant was justified in slaying the deceased only in order to save himself "from great bodily harm at the very time of the fatal blow." It can be readily seen that the instruction complained of here is not subject to the criticisms made of the instructions granted in the three cases cited above, and we think there was no error in the granting of the above mentioned instruction.

 The next point argued by the appellant is that the court erred in granting an instruction to the State authorizing the jury to find the defendant guilty of manslaughter, and in refusing to grant the instruction

requested by the appellant limiting the right of the jury to a finding that the appellant was guilty of murder or an acquittal. But we think that under the facts in this case the manslaughter instruction was properly given, and that the jury was justified in finding that the appellant was guilty of manslaughter rather than murder.

The appellant next contends that the court erred in refusing to grant the following instruction requested by the appellant:

"The court instructs the jury for the defendant that if the evidence shows that the deceased was physically capable of inflicting great and serious bodily harm upon the defendant with his feet and hands, and that the defendant had reason to believe and did believe that he was then and there in danger of such harm at the hands of the deceased, and stabbed the deceased to protect himself from such harm, then it is immaterial, and makes no difference whether the deceased was armed or not at the time of the killing."

We do not think that the action of the court in refusing to grant the above mentioned instruction, under the facts in this case, constitutes reversible error. There is no proof in the record to show that the deceased at the time of the fatal encounter was attempting to inflict "great and serious bodily harm upon the defendant with his hands and feet." The defendant testified that at the time he stabbed the deceased the deceased was advancing on him with a shovel. The defendant testified more than once that he was afraid of the deceased. But the mere fact that the deceased may have been "physically capable of inflicting great and serious bodily harm upon the defendant with his feet and hands," and that the defendant was afraid of the deceased, was not sufficient in itself to justify the stabbing. There may be cases in which the court would be justified in granting an instruction like the instruction quoted above. But we think that the

refusal of the court to grant the instruction under the facts in this case does not constitute reversible error.

The judgment of the lower court is therefore affirmed.

Affirmed.

All Justices concur.