SMITH, Justice:
Appellant, Lillie Bell Harrell, was indicted and tried in the Circuit Court of Lowndes County for the murder of Jesse Williams. She was convicted and sentenced to serve a life term in the penitentiary. This appeal is from that conviction and sentence.
There are several assignments of error, at least one of which presents a novel and interesting question. However, it is necessary that we notice only one of the assignments, that being whether the evidence was sufficient to sustain the conviction. The other matters of which appellant complains are unlikely to recur upon a retrial of the case.
The homicide occurred on the night of June 4, 1967 at the home of appellant. A party was in progress and Williams had come, although he had not been invited. A quarrel began between two teenagers, one of whom appealed to the hostess (appellant) to make the other “leave him alone.” She was engaged in trying to pacify the two boys when Williams broke in, although he was in no way involved, and loudly challenged appellant to take the matter up with him. He told her “not to talk to a minor but to talk to a man” or “if you are going to mess with anybody, mess with a ■man.” Appellant told him to leave her home, he refused and challenged her ability to put him out, but some of the other people there pushed him out the front door onto the porch. According to appellant’s testimony, Williams had threatened her and had drawn a knife with which he inflicted several cuts, more or less superficial, upon her arm. In any event, she seized a pistol which she kept under her bed and shot decedent in the chest, killing him. She testified that when she fired, Williams was attempting to reenter the door and still had the knife with which he then succeeded in inflicting a small cut on her face. There is evidence suggesting that Williams neither cut appellant, nor had a knife, and that he was outside the door when shot. After the shooting, the officer called by appellant found Williams’ body off of the front porch on the ground and an open knife lying by his hand. No one saw the actual shooting of Williams except appellant. However, testimony in the record by some of the persons present at the party tended to show that Williams did not have a knife and that appellant was not cut by him, these witnesses having been there and not having seen the knife or the cuts. Moreover, the evidence is sufficient to raise a factual question as to whether Williams was shot just inside the door, in the door or outside of the door, as well as to whether he was engaged in actually trying to reenter when shot. It is argued on behalf of appellant that she was entitled to an instruction directing the jury *885 to return a verdict of not guilty under the rule announced in Westbrook v. State, 202 Miss. 426, 432, 32 So.2d 251, 252 (1947). In Westbrook the Court said:
It has been firmly established by a long line of decisions in this state, of which Weathersby v. State, 165 Miss. 207, 147 So. 481, is typical, that where the defendant is the only surviving witness to a homicide his version of what occurred must, if reasonable, be accepted as true unless substantially contradicted in material particulars by the physical facts or by the facts of common knowledge, and that it is not enough to contradict that version in mere matters of detail which do not go to the controlling substance.
We think the testimony for the State, while essentially negative in character, was sufficient to withstand appellant’s motion for a directed verdict of not guilty.
However, upon the whole record we are forced to conclude that the ends of justice will be better served by a remand of the case for a new trial. In this connection we have particularly noted the following undeniable circumstances:
(1) The homicide occurred at appellant’s home into which Williams had come as an uninvited intruder.
(2) Williams became a trespasser (if not already a trespasser) when appellant ordered him to leave her home, he refused and had to be pushed out the door.
(3) Williams was a man, well built and strong, and appellant a woman.
(4) It was not unlawful for appellant to have or keep in her home the weapon used.
(5) Williams forced himself into the discussion between appellant and the two boys and was the initiator and aggressor in the fatal difficulty with appellant.
(6) The entire affair was one episodic, continuous and uninterrupted quarrel, which had been begun by Williams and culminated in the fatal shooting.
(7)The fatal bullet struck Williams squarely in the chest, indicating that the two were confronting each other when it was fired.
Several sections in the Mississippi Code 1942 Annotated (1956) seem to be relevant to a discussion of the question under review.
Section 2221 reduces to manslaughter a homicide which at common law would have been murder when the person killed “* * * is engaged in the perpetration of any * * * misdemeanor * * * or in the attempt to commit any * * * misdemeanor * *
Section 2218 provides:
The killing of a human being by the act, procurement, or omission of another shall be justifiable in the following cases :

(e) When committed by any person in resisting any attempt unlawfully to kill such person or to commit any felony upon him, or upon or in any dwelling-house in which such person shall be

Section 2224 defines as manslaughter a killing committed “without malice,” and “in the heat of passion.”
Finally, section 2225 provides as follows:
Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter, (emphasis added).
This statute has been in the books for many years, having appeared as Chapter 64 of Hutchinson’s Code 1848. It was construed in the early case of Long v. State, *886 52 Miss. 23, 39-40, (1876) in this language :
We confess ourselves much embarrassed to give it (this statute) a proper construction. The language, literally taken, seems to mean that every killing will be manslaughter, however, unnecessarily perpetrated, provided it was done while the party slain was engaged in an unlawful act, or after the attempt to do such unlawful act had failed and was abandoned. Thus construed, there is no limitation as to the time when the killing must take place, nor any limitation upon the nature of the unlawful act which the party slain had been engaged in attempting.
In this broad sense it would declare as manslaughter the killing of a man who had been engaged the hour or the day before in an attempted trespass, which had failed. Such a construction would be aliter inconsistent with the cardinal principles of criminal law, and shocking to the moral sense.
We must think that the “unlawful act” spoken of means a crime or misdemean- or. The language is “to commit a felony, or to do some other unlawful act.” The unlawful act, we think, must be of a criminal nature, even though inferior to felony. We think, further, that the killing must take place either during the actual resistance to the unlawful act, or immediately following its defeat and abandonment. If it occurred after the lapse of any considerable period, it would seem impossible to divest it of the element of malice. Thus construed, the statute amounts to this: If I see another engaged in the commission of an offense against the criminal laws and I resist its accomplishment, and in such resistance slay the person so engaged, my crime will be manslaughter and not murder, even though the act of killing was unnecessary to the defeat of his act; and the same result will follow where the killing ensues instantly after the abandonment by him of his attempt. Because I was engaged, or had just been engaged, in resisting the doing, by him, of an unlawful act, the law will, to some extent, throw the mantle of charity over the necessary slaughter committed by me, by reducing my offense from murder to manslaughter. It amounts to a legal imputation of heat of blood for my benefit, whether in point of fact the jury should believe that there was such heat or not.
In Bangren v. State, 196 Miss. 887, 897, 17 So.2d 599, 600 (1944) the Court again had occasion to apply section 2225, supra, and said:
A person may be guilty only of manslaughter or justifiable homicide when slaying another even though the accused is mad and is bearing ill will toward his adversary at the time of the killing, if the act is done while resisting an attempt of the latter “to do any unlawful act, or after such attempt shall have failed,” if such anger or ill will is engendered by the particular circumstances of the unlawful act then being attempted, or the commission of which is then thwarted, and is nonexistent prior thereto. Each case must depend upon its own facts and circumstances.
The factual situation in Bangren, supra, is in many respects analogous to that in the present case. In Bangren, the Court, under section 2225 held that the evidence, while capable of supporting a conviction of manslaughter was insufficient to warrant a conviction of murder. In support of this view the Court cited Bowen v. State, 164 Miss. 225, 144 So. 230 (1932); Williams v. State, 122 Miss. 151, 433, 84 So. 8 (1919) and Long v. State, 52 Miss. 23 (1876).
As we have said, the present case is close upon the facts as to the guilt or innocence of the accused. After carefully reviewing the whole record, we have concluded that while the evidence was sufficient to withstand appellant’s motion that the jury be instructed peremptorily to re *887 turn a verdict of not guilty, the conviction should be reversed and the case remanded for a new trial in order that another jury may pass upon appellant’s guilt or innocence of unlawful homicide, and upon the grade of her offense, if found guilty.
The case will he reversed and remanded for a new trial.
Reversed and remanded.
GILLESPIE, P. J., and RODGERS, JONES and BRADY, JJ., concur.