## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 97-CT-00504-SCT

*DEANNA WADE*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/04/97 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | TRAVIS BUCKLEY |
| | ROBERT B. McDUFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | ALEXANDER MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED AND REMANDED FOR RE-SENTENCING-10/21/1999 |
| MOTION FOR REHEARING FILED: | 11/04/99; denied 01/13/2000 |
| MANDATE ISSUED: | 01/20/2000 |

## EN BANC.

## SMITH, JUSTICE, FOR THE COURT:

¶1. This case comes to this Court on writ of certiorari granted on the petition of Deanna Wade and the State of Mississippi, both being aggrieved by the decision of the Court of Appeals. *Wade v. State*, 724 So. 2d 1007 (Miss. Ct. App. 1998).

¶2. Wade's petition argues that the Court of Appeals erred in finding that she was guilty of manslaughter and in remanding for re-sentencing for the lesser crime of manslaughter. Wade also argues that in fact, she acted in self defense, and should have been found not guilty and acquitted of the charge of murder.

¶3. The State argues that the Court of Appeals erred in rejecting the conviction for murder because there was sufficient evidence to support the jury verdict. The State contends that the Court of Appeals erred and substituted its judgment for the jury in reversing the murder conviction and remanding for re-sentencing for manslaughter only.

¶4. After a review of this record and careful consideration of the issues, we find that the Court of Appeals

decision is correct. We therefore affirm the Court of Appeals and remand to the circuit court under our "direct remand rule" for re-sentencing for manslaughter in accordance with this opinion. *Shields v. State*, 722 So. 2d 584 (Miss. 1998).

## FACTS

¶5. Deanna Wade and Ralph Simpson owned and operated a night club in Claiborne County. They were also partners in a tumultuous and often violent personal relationship. Wade testified to the numerous and vicious beatings she suffered at Simpson's hands which typically took place when he was intoxicated. In the early morning of October 6, 1996, Wade and two waitresses were outside the bar when they heard gunfire. A witness testified that Simpson had fired a .45 automatic pistol into the club's wall just to get Wade's attention. There was also testimony that Simpson had been drinking whiskey all night. Wade entered the club, and an argument ensued. Testimony showed that Simpson first beat Wade's head against a table top with enough force to knock a sign off the wall. Simpson then freed Wade and their argument continued. Witnesses testified that Simpson next pulled Wade by the hair and beat her head against the edge of a pool table.

¶6. Wade testified that she wanted to call her mother to come get her but the phone in the bar had been knocked from the wall. She then went to the nearby house she shared with Simpson and returned with a .38 caliber revolver. She testified that Simpson left the area behind the bar and came toward her. Two witnesses testified that Wade said something to the effect of "you ain't gonna hit on me no more." Wade testified that she fired once and that Simpson fell. He died shortly thereafter. A jury found Wade guilty of murder, and she was sentenced to life in prison.

¶7. The Court of Appeals held that the factual circumstances evidenced a lack of malice on Wade's part and reversed the conviction with a seven-vote majority. The Court of Appeals found:

> While Wade was undoubtably mad, it is also clear that her ill will was engendered by the earlier unlawful acts of Simpson and what appeared to be a renewed attack. This clearly was a killing in the heat of passion and arguably a case of imperfect self-defense and as such, manslaughter was the appropriate verdict.

724 So. 2d at 1011. The Court of Appeals further remanded the case for re-sentencing on the offense of manslaughter. *Id.* Judge Payne wrote a separate dissent in which she opined that the offense constituted justifiable homicide and that the conviction should have been reversed and rendered. *Id.* at 1012-14. Judge Southwick, joined by Judge McMillin, dissented on grounds that the conviction of murder was supported by the evidence and that the sentence of life in prison should have been affirmed. *Id.* at 1014.

## I.

¶8. When a defendant has been found guilty by a jury, appellate authority is limited, and the verdict should not be overturned so long as there is "credible evidence in the record from which the jury could have found or reasonably inferred each element of the offense." *Davis v. State,* 586 So.2d 817, 819 (Miss. 1991). The reviewing court is to examine all of the evidence in a light most favorable to the verdict. *Yates v. State*, 685 So.2d 715, 718 (Miss. 1996). This Court has held that reversal is warranted only where the evidence is such that reasonable and fair-minded jurors could only find the accused not guilty of the offense for which he was convicted. *Wetz v. State*, 503 So. 2d 803, 808 (Miss. 1987).

¶9. In the present case, the jury was instructed on murder, manslaughter, and self-defense. The jury chose to convict on the murder charge. In *Gossett v. State*, 660 So. 2d 1285, 1293 (Miss. 1995), the defendant was charged with murder yet the jury was instructed on manslaughter as well. This Court upheld the murder conviction after finding that the evidence demonstrated "ample time in which to form the requisite intent for the crime of murder." The Court held:

> While there was certainly an evidentiary basis for the crime of manslaughter, the trial court properly granted an a manslaughter instruction and the jury nevertheless unanimously agreed that Gossett was guilty of murder.

*Id.* The Court of Appeals majority opinion concluded that, in this case however, there was not sufficient evidence to support a jury verdict of murder. The Court of Appeals recognized that the "court must consider all of the evidence which supports the State's case in a light most favorable to the State," and "the State must be given the benefit of all favorable inferences. . . ." 724 So. 2d at 1009 (quoting *Butler v. State*, 544 So. 2d 816, 819 (Miss. 1989)).

¶10. Here, evidence was presented that Wade left the scene of the fight, went to her house, retrieved a pistol, and returned, entering the bar and, as Simpson approached her, she cursed and declared "You ain't gonna hit on me no more." While the jury could have declined to draw an inference of malice, these particular facts, coupled with the other important facts set out herein related to the prior beatings and Wade's unique situation, are insufficient to support a finding of malicious intent. Unlike *Gossett*, the evidence here supports a finding of guilt of manslaughter rather than murder.

¶11. The issue of justifiable self-defense presents a question of the weight and credibility of the evidence rather than sufficiency and is to be decided by the jury. *Meshell v. State*, 506 So. 2d 989, 991-92 (Miss. 1987). The jury verdict in this case should not be overturned unless this Court is "convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Gossett*, 660 So. 2d at 1294.

¶12. In this case , the jury heard one witness, Janice Smith, testify

> And I was standing on the other side of the bar, and Deanna came in hollering something at Ralph like, you bastard or something. I can't remember what it really was and said, "I bet you won't never hit me again or hurt me again."

Another witness, Bob McKay, testified

> And about that time the door opened in the back and then Deanna showed up. I saw she had a gun so I kind of moved around this way, and Ralph, he just turned around.

> I mean, he was facing - she was coming up this way and he turned around, he made a couple of steps back toward her and about two, I imagine, and she said, "you ain't gonna hit on me no more." So then she shot.

This Court recognizes the theory of "imperfect self-defense" whereby an intentional killing may be considered manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm. *Lanier v. State*, 684 So. 2d 93, 97 (Miss. 1996). In *Lanier*, this Court reversed a murder conviction where the trial court refused to give an instruction which

would have allowed the jury to reject a self-defense theory yet still find the defendant guilty of only manslaughter. *Id.* However, Wade argues against manslaughter "imperfect self defense" and instead argues that she should be acquitted and her case reversed and rendered.

¶13. The apprehension or fear that will justify killing another in self-defense must appear objectively real to a reasonable person of average prudence. *Hart v. State*, 637 So.2d 1329, 1339 (Miss. 1994). In the case at bar however, there is a major problem with Wade's proof of self defense. Although she did testify, Wade stated that she had no memory of acquiring the gun. Nor did she testify that the reason she shot Simpson was because she feared great bodily harm or death. Contrary to the dissent, no other witness testified about Wade being in danger of severe bodily harm or death on this last occasion. The jury in fact was instructed regarding self-defense with instructions D-2, S-3, and D-8 all being given by the trial court. The jury rejected Wade's self-defense. The Court of Appeals was correct regarding this issue which is clearly "heat of passion" manslaughter.

## II

¶14. The Court of Appeals found that the proof only supported the crime of "heat of passion" manslaughter and remanded for re-sentencing. The Court of Appeals supports its decision for remand for re-sentencing for manslaughter with *Harrell v. State*, 218 So. 2d 883 (Miss. 1969). *Harrell* is a case with facts which are stronger in support of a self-defense or "imperfect self-defense" theory. There, Harrell killed an intruder who was first ejected from her home and later returned evidencing aggressive intent. There was a factual dispute as to whether the intruder had actually entered the house or was in the doorway and whether or not he was wielding a knife. The Court acknowledged that the evidence was sufficient to withstand a motion for a directed verdict of not guilty, but that "the ends of justice will better be served by a remand of the case for a new trial. *Harrell* does not support a remand with directions to find guilt on manslaughter only. Rather, it simply remands for another trial on guilt and degree.

> As we have said, the present case is close upon the facts as to the guilt or innocence of the accused. After carefully reviewing the whole record, we have concluded that while the evidence was sufficient to withstand appellant's motion that the jury be instructed peremptorily to return a verdict of not guilty, the conviction should be reversed and the case remanded for a new trial in order that another jury may pass upon appellant's guilt or innocence of unlawful homicide, and upon the grade of her offense, if found guilty.

*Harrell* at 886-87. This language mandates a new trial where the possibility of guilt still exists for both the principal and the lesser-included offense, unlike the present case where the Court of Appeals held, as a matter of law, that Wade was not guilty of murder but rather was guilty of manslaughter. The real importance of the reliance upon *Harrell* by the Court of Appeals is found in that court's quote as follows:

> A person may be guilty only of manslaughter or justifiable homicide when slaying another even though the accused is mad and is bearing ill will toward his adversary at the time of the killing, if the act is done while resisting an attempt of the latter "to do any unlawful act, or after such attempt shall have failed," if such anger or ill will is engendered by the particular circumstances of the unlawful act then being attempted, or the commission of which is then thwarted, and is nonexistent prior thereto. Each case must depend upon its own facts and circumstances.

*Harrell v. State*, 218 So. 2d at 886 (Miss. 1969)(citing *Bangren v. State,* 196 Miss. 887, 897, 17 So.

2d 599, 600 (Miss. 1944)).

¶15. "Heat of passion" manslaughter requires the absence of malice. Miss. Code Ann. § 97-3-35 (1994). This Court has held that malice aforethought equates with deliberate design, which "generally implies careful and unhurried consideration of the consequences." *Gossett v. State,* 660 So. 2d 1285, 1293 (Miss. 1995). Applying *Harrell* and *Gossett* to the case at bar, we find a lack of malice by Wade in shooting Simpson. The killing was more appropriately a killing in the heat of passion, thus manslaughter was the only appropriate verdict. Simpson had a prolonged history of violence exhibited towards Wade, especially when highly intoxicated, as he was on the night of this incident. The beatings he administered upon her were too numerous to count, but many were vivid to some witnesses due to their extremely brutal nature. Noteworthy are the two severe beatings of her head against tables administered upon Wade by Simpson shortly before this killing occurred. Simpson was known to carry a gun, and had exhibited and fired his gun inside the bar shortly before this killing. Simpson had previously threatened to kill Wade. Wade knew he carried the gun and thought that he still had it at the time of the killing, even though it had, in fact, been taken from him in her absence. It is undisputed that when Wade re-entered the bar, Simpson took at least two steps towards her, whereupon she cursed and stated that "you ain't gonna hit on me no more," and she shot him one time. Wade had only absented herself for a short time. Witness Coy Flanagan, in explaining how short the time frame was stated, "and then I turned him loose and I turned around and there she was." Wade was obviously mad and upset, and her ill will was engendered by the prior beatings administered upon her by Simpson earlier in the evening. According to at least one witness, upon re-entering the bar, gun in hand, Wade cursed and told Simpson that he was not going to beat her again. Whereupon his taking a mere two steps towards her, she shot Simpson immediately before he had an opportunity to say, or for that matter do anything which could have been perceived by Wade as a threat by Simpson that he was about to inflict serious bodily injury or threaten her life. Wade argues that she had no where else to go, in that, she had tried unsuccessfully to call her mother, but that the phones would not work and Simpson had her car keys in his pocket. In fact, Wade did not have to go back into the bar, especially after having armed herself with a pistol. Having already left the bar, she could have remained in their living quarters. Simpson, however, could be expected to come to those quarters at some time during the night.

¶16. The Court of Appeals was correct in its finding of manslaughter, which is defined as "[t] killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense. . . ." Miss. Code Ann. § 97-3-35 (1994). This Court, in *Mullins v. State*, 493 So. 2d 971 (Miss. 1986), has defined manslaughter, "heat of passion" as follows:

> A state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.

*Id.* at 974. The record clearly reflects that shortly before the killing, Wade had received two brutal beatings inflicted upon her head and body by Simpson. Wade's arming herself and returning to the bar, her cursing and statement that Simpson would not beat her anymore is demonstrative of her then emotional rage and conduct being the result of Simpson's initial provocation. Such evidence, we find, is sufficient for a "heat of passion" manslaughter conviction.

¶17. Unlike *Manuel v. State*, 667 So. 2d 590, 592 (Miss. 1995), *Hinson v. State*, 218 So. 2d 36, 39 (Miss. 1969), and *Marshall v. State*, 220 Miss. 846, 855, 72 So. 2d 169, 172 (1954) relied upon by the dissent, there was no testimony from Wade nor any other witness that Wade perceived she would receive "serious and great bodily injuries." *Manuel* at 592, *Hinson* at 39, *Marshall* at 172.

¶18. The dissent also relies on *Manuel* where an unarmed boyfriend attacked Manuel, and she defended herself with a knife and was convicted of manslaughter. This Court reversed because the trial court failed to give a jury instruction that she had the right to protect herself. Here, however, Wade's instructions regarding self-defense were all given by the trial court to the jury for its consideration. The jury rejected self-defense.

¶19. We hold the evidence was insufficient to convict Wade of murder. To do so would be "contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. *Gossett,* 660 So.2d at 1294. The facts of the case are better suited for imperfect self defense or "heat of passion manslaughter."

¶20. The Court of Appeals in convicting Wade of manslaughter, remanded for re-sentencing, but in so doing, failed to cite this Courts' long line of cases in support thereof. Of necessity, we now direct our attention to those cases. The Court has held, in what is termed "the direct remand rule," that an appellate court may remand a case to the trial court for sentencing on a lesser-included offense where the greater offense was not proved, but the elements of the lesser-included offense were sufficiently met. *Shields v. State*, 722 So. 2d 584, 587 (Miss. 1998). The Court, in supporting this direct remand rule, stated that its "logical underpinnings" "have long been grounded on the fact that guilt of a true lesser included offense is implicitly found in the jury's verdict of guilt on the greater offense," *Id.* at 585, *Anderson*, 290 So. 2d at 628-29; *see also* *Yates v. State*, 685 So. 2d 715 (Miss. 1996) *citing* *Washington v. State,* 222 Miss. 782, 787, 77 So 2d 260, 263 (1955)); *Alford v. State*, 656 So. 2d 1186 (Miss. 1995)*; Bogard v. State*, 624 So. 2d 1313, 1320 (Miss. 1993); *Dedeaux v. State*, 630 So. 2d 30, 33 (Miss. 1993). Therefore, applying the direct remand rule, we affirm the Court of Appeals decision finding Wade guilty of manslaughter, and we remand to the trial court for re-sentencing for manslaughter in accordance with this opinion.

## CONCLUSION

¶21. We affirm the Court of Appeals decision to reverse Wade's conviction of murder and instead convict her of manslaughter. Wade's case is remanded to the trial court for re-sentencing for manslaughter in accordance with this Court's direct remand rule and this opinion.

¶22. **AFFIRMED AND REMANDED TO THE TRIAL COURT FOR RE-SENTENCING.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**McRAE, JUSTICE, DISSENTING:**

¶23. I disagree with the majority's conclusion that the facts of this case support a verdict of manslaughter and not self-defense. When the defendant relies on self-defense, the burden is on the prosecution to prove the absence of self-defense beyond a reasonable doubt. Because the prosecution did not meet its burden of

proving the shooting was not in self defense, I would reverse and render or, at the very least, grant a new trial.

¶24. Deanna Wade had been the victim of Ralph Simpson's alcohol-fueled abuse for a period of four years prior to the altercation ending in Simpson's death. Wade and Simpson owned and operated a bar together and lived together next to the bar. In the early hours of October 6, 1996, Wade was standing outside the bar with two of her employees. Inside the bar, Simpson, who had been drinking straight whiskey for several hours[1], fired a gun into the wall to get the women to come inside. When Wade entered the bar, Simpson got her on top of the pool table and, holding her by the hair, proceeded to beat her head against the table. Her head hit the surface so hard that it caused a sign to fall off the wall behind the pool table and golf-ball sized lumps to appear on her head. Simpson eventually released Wade and they fought over the telephone which fell to the floor. Simpson grabbed Wade's head again and resumed beating her head on the pool table. One of the witnesses attempted to pull Simpson off of Wade and as Simpson was pulled he pulled Wade to the floor by the hair of her head. One man who saw Simpson reaching for the pistol stuck into the back of Simpson's pants, removed the gun and placed it on the bar. "Apparently," the Court of Appeals writes, "Wade was unaware that Simpson had been disarmed and, according to her testimony, believed he still had the gun." *Wade v. State*, 724 So.2d 1007, 1009 (Miss.Ct.App. 1998). Wade tried to call for help, but the phone had been knocked off the hook during the fight. Wade was unable to leave the premises by car because her car keys were in Simpson's pocket. Wade got a pistol, presumably from the one-room cabin she shared with Simpson, and stood six feet in front of Simpson pointing the gun at him. All of those who witnessed the shooting[2] agreed that at that point it was Simpson who moved towards Wade. Wade shot once and then fell upon Simpson crying and hugging him. When she was later told that Simpson had died, Wade passed out.

¶25. The majority, noting that Wade failed to testify that she shot Simpson because she feared great bodily harm or death, finds that "[t]he evidence was simply insufficient for self-defense." While it is true that Wade testified she had no memory of acquiring a gun and/or shooting Simpson (not surprising given the brutal beating she had just received), there was an abundance of evidence supporting her defense that she was in reasonable fear of great bodily harm when she shot Simpson: Simpson became violent when drinking and had beaten Wade numerous times in the past; Simpson was drunk that night; Simpson had just inflicted another severe beating; Simpson was known to carry a pistol; Simpson had just fired a pistol and, as far as Wade knew, Simpson still had the pistol on him; and in the seconds before Simpson was shot, Simpson moved towards Wade who was standing still. Simpson had no safe place to go. She could not leave the premises because she had no transportation. If she stayed at the cabin alone she ran the risk of Wade beating her again.

¶26. I find it surprising that the majority places such great emphasis on Wade's failure to testify that she feared great bodily harm or death when she shot Simpson. Nor did any other witness, the majority writes, testify "about Wade being in danger of severe bodily harm or death on this last occasion." The majority is, however, willing to concede that Wade was under the impression that Simpson was still in possession of a gun when he started towards her for the last time. The majority is unreasonable in its unwillingness to concede that a reasonable person in Wade's shoes would be in fear for her life. Even had Wade testified that she was in great fear, her testimony would have been self-serving. And the opinions of the other witnesses would have been only that - opinions. Surely what we know about the circumstances surrounding the shooting are more important in determining whether this was self-defense than any self serving testimony on Wade's part or opinion testimony from others that Wade was in fear for her life. What happened to

common sense?

¶27. All of the unrefuted testimony supports Wade's claim of self-defense. Clearly, it was reasonable for Wade to believe that when Simpson approached her this last time, she was in danger of being seriously harmed. All of the witnesses were in agreement that the beating Wade had just suffered was a serious one. As Simpson moved towards Wade, it was entirely reasonable for Wade to believe that the harm she had just suffered was about to continue.

¶28. Where the defendant relies on self-defense, the burden is on the prosecution to prove the absence of self-defense beyond a reasonable doubt. *Heidel v. State*, 587 So.2d 835, 843 (Miss.1991); *Sloan v. State*, 368 So.2d 228, 229 (Miss.1979); *Pierce v. State*, 289 So.2d 901, 902 (Miss.1974), *Scott v. State*, 203 Miss. 349, 354, 34 So.2d 718, 719 (1948).

¶29. Indeed, even if Wade knew that Simpson was unarmed, she may still have been justified in shooting him under Mississippi law. "[W]here an individual is unjustifiably attacked by a larger and unarmed person, and . . . is incapable of coping with that person in a physical confrontation, and . . . reasonably perceives that she will receive serious and great bodily injuries as a result, [she] is justified in killing her attacker with a deadly weapon." *Manuel v. State*, 667 So.2d 590, 592 (Miss. 1995). *See also* *Hinson v. State*, 218 So.2d 36, 39 (Miss.1969); *Marshall v. State*, 220 Miss. 846, 855, 72 So.2d 169, 172 (1954). In *Manuel*, a woman who was being assaulted by her drunk but unarmed boyfriend defended herself with a knife. Her subsequent manslaughter conviction was reversed for failure to give the jury an instruction to the effect that she had the right to protect herself with a deadly weapon where her unarmed opponent was larger than she.

¶30. In this case, there was little Wade could do to escape Simpson's abuse. She could not leave the premises since she was unable to call for help and the keys to her car were in Simpson's pocket. If she stayed in the cabin or outside, she had less protection because there was no one else there. When she reentered the bar with a gun for protection, Wade shot Simpson only after he started towards her. Given the brutal beating she had just suffered at his hands, she reasonably feared continued violence. If this was not self defense, it is hard to believe that self-defense exists in Mississippi anymore. I would reverse and remand for a new trial.

¶31. Accordingly, I dissent.

1. Simpson's blood alcohol level registered at .27%.

2. Five persons who were in the bar that night testified at the trial. Two, Melissa Cockerhan and Robert Barnett, were not in a position to see the actual shooting. The other three, Janice Smith, Coy Flanagan and Bob McKay, agreed that it appeared that Simpson was moving towards Wade when he was shot. Wade testified that she could not remember the actual shooting.