## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-KA-00254-SCT

*MILTON EVANS, JR.*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT: 09/28/1998
TRIAL JUDGE: HON. FRANK G. VOLLOR
COURT FROM WHICH APPEALED: SHARKEY COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: RICHARD EARL SMITH, JR.
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
    BY: JEAN SMITH VAUGHAN
DISTRICT ATTORNEY: G. GILMORE MARTIN
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 07/27/2000
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE PRATHER, C.J., MILLS AND COBB, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

### INTRODUCTION

¶1. Milton Evans, Jr., was convicted of one count of manslaughter, one count of murder, and two counts of aggravated assault. He now appeals his manslaughter conviction, arguing that the jury was improperly instructed on the defense of accident and misfortune. Additionally, he appeals his murder conviction, arguing that the jury was improperly instructed on the elements of depraved heart murder. Evans does not appeal his two aggravated assault convictions.

### STATEMENT OF THE CASE

¶2. On January 31, 1997, Milton Evans, Jr., Luciana Bunton and others traveled to Rolling Fork, Mississippi. Soon after their arrival, the group proceeded to a bar named The Rocking Chair Lounge (hereinafter "Lounge"). Prior to entering the Lounge, a firearm was procured by one of the group members, although it is disputed as to exactly who had possession of the gun upon entering the Lounge. Evans testified that Bunton carried the gun into the Lounge. Two witnesses for the State testified that they entered the Lounge with Evans, at which time he had the gun.

¶3. Once inside the Lounge, Evans got into a confrontation with several of the bar patrons (hereinafter "patrons"). Evans testified that he attempted to avoid any further confrontation by exiting through the back

door, only to find it locked. He then testified that he became cornered between the locked door and the patrons, who had given chase. At this point, it is undisputed that Bunton became positioned between the cornered Evans and the patrons, who were blocking Evans' path back into the main part of the Lounge (and the other exit). How Bunton found her way into this position is disputed. According to Evans, Bunton pushed her way through the patrons, placed herself between him and them, and attempted to defuse the situation by talking to the patrons. According to witnesses for the State, Evans grabbed Bunton and held her hostage, using her as a shield.

¶4. While positioned between Evans and the patrons, Bunton was fatally struck by a gunshot from behind. Evans was the only person behind Bunton at the time she was shot. Soon thereafter, while still in the Lounge, Bill Hollins, Jr. was fatally shot; and Lester Hollins and Raymond Hollins were shot and injured.

¶5. At trial, Evans denied "knowingly[1]" shooting any of the victims, and explained the chain of events in the following manner: While inside the Lounge, Bunton had a gun tucked away in the small of her back, inside the waistband of her pants. As the patrons converged on him while he was cornered against the locked door, one of the patrons brandished a gun and pointed it at him. At that time, fearful for his safety, Evans reached for Bunton's gun and fired it straight up in the air three or four times in an attempt to get the patrons to disperse, which they did. Evans then ran back into the main part of the Lounge, toward the front door, during which time he heard several gunshots. Once he finally made it outside, the police were approaching, and he dropped his gun and was taken into custody.

¶6. Witnesses for the State described the shooting in an entirely different manner. They testified that while Evans was holding Bunton, using her as a shield, one of the patrons grabbed her in an attempt to pull her away from Evans, at which point Evans shot Bunton, and then shot the other three victims.

¶7. Mississippi Crime Lab testing showed that the rounds which struck and killed Bunton and Bill Hollins, Jr. were fired from Evans' gun.

¶8. On April 14, 1998, Evans was indicted in the Circuit Court of Sharkey County. He was charged with murder in the death of Luciana Bunton (count I), murder in the death of Bill Hollins, Jr. (count II), aggravated assault in the shooting of Lester Hollins (count III) and aggravated assault in the shooting of Raymond Hollins (count IV). Per a defense request, the case was transferred to Leflore County. Trial began on August 10, 1998, and on August 13, 1998, the jury found Evans guilty of murder in the death of Bill Hollins, Jr., guilty of manslaughter in the death of Luciana Bunton, and guilty of aggravated assault in the shootings of Lester Hollins and Raymond Hollins. Evans was subsequently sentenced to twenty (20) years for count I, life imprisonment for count II, and fifteen (15) years each for counts III and IV; counts I through III to run consecutively, count IV to run concurrently with count III. Evans now appeals his convictions on counts I and II, raising the following assignments of error:

## ISSUES

**I. Jury instruction C-6 improperly instructed the jury that they must find that Evans acted in self-defense, and that some individual other than Evans had to have a weapon prior to finding that the death of Luciana Bunton, if caused by Evans, was an accident or act of misfortune, and therefore excusable.**

**II. The failure of defense counsel to insure that the jury was properly instructed on**

**excusable homicide based on accident and misfortune amounted to ineffective assistance of counsel.**

**III. The trial court erred in failing to amend jury instruction S-5, which defined depraved heart murder, to include the phrase "and not in necessary self-defense."**

## LEGAL ANALYSIS

¶9. "In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Coleman v. State*, 697 So.2d 777, 782 (Miss. 1997).

## Was jury instruction C-6 erroneous?

¶10. Jury instruction C-6 applied only to count I of the indictment, the charge of murder in the death of Luciana Bunton. It stated the following:

> The Court instructs the jury that you are not to judge the actions of Defendant, Milton Evans, Jr., in the cool, calm light of after developed facts, but instead you are to judge the Defendant's actions in the light of the circumstances confronting the Defendant at the time, as you believe from the evidence that those circumstances reasonably appeared to the Defendant on that occasion, and if you believe that under those circumstances it reasonably appeared to Defendant at the instant, if any, that [any of the patrons] took up a weapon, that the Defendant there and then had reasonable ground to apprehend a design on the part of [any of the patrons] to kill the Defendant or do him some great personal injury, and that there reasonably appeared to the Defendant to be imminent danger of such designs being accomplished, then the Defendant, Milton Evans, Jr., was justified in anticipating an attack by [any of the patrons], and further if you believe from the evidence that Luciana Bunton died as a result of the discharge of a pistol which was, at the time of the fatal shot, in the possession of Defendant, but that the fatal shot was fired through accident and misfortune, at a time when Defendant, was lawfully acting in self-defense, then you must find Defendant not guilty in the death of Luciana Bunton.

Miss. Code Ann. § 97-3-17(b), which provides a defense for an accidental killing, states that "[t]he killing of any human being by the act, procurement, or omission of another shall be excusable [w]hen committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation . . ." Miss. Code Ann. § 97-3-17(b) (1994).

¶11. "In homicide cases, the trial court should instruct the jury about a defendant's theories of defense, justification, or excuse that are supported by the evidence, no matter how meager or unlikely." *Manuel v. State*, 667 So.2d 590, 593 (Miss. 1995).

¶12. Evans testified that he did not think that he shot Luciana Bunton, but if he did, he did not intend to do so, and it happened as he was preparing to fire his gun in the air to scare off the attacking patrons. In other words, Evans' theory as to the death of Luciana Bunton was that if he shot her, it was an accident which occurred as he was acting in lawful self defense. Evans was entitled to have this theory presented to the jury, and instruction C-6 did just that. The case sub judice is factually similar to *Day v. State*, 589 So.2d 637 (Miss. 1991), where Day was convicted of murder in the shooting death of J.B. Johnson. In that case, Day testified that he saw Johnson running towards his car, at which time, Day grabbed his gun and got out

of the car. Day further testified that he intended to fire a shot into the air in order to scare Johnson off, but while attempting to disengage the gun's safety, the weapon accidently fired in Johnson's direction, fatally striking him. Although the issue in *Day* was the exclusion of other evidence which sought to bolster Day's defense, this Court stated "[t]he implicit assertion that the initial actions were in self defense supports Day's contention that the actual firing was accidental." *Id.* at 642.

¶13. Jury instruction C-6 presented Evans' theory that if he caused the death of Luciana Bunton, it was an accident which happened while he was acting in lawful self defense. This Court has previously acknowledged that it may be appropriate for a defendant to raise such a defense in factual situations similar to the one presently before this Court. Accordingly, we hold that the trial court did not err when it granted jury instruction C-6.

## Did the failure of Evans' attorney to object to C-6

## amount to ineffective assistance of counsel?

¶14. This Court has stated:

> To be successful on an ineffective assistance claim, the defendant must meet the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), and adopted by this Court. The *Strickland* test requires a showing of (1) deficiency of counsel's performance (2) sufficient to constitute prejudice to the defense ... based upon the totality of the circumstances.

*Ivy v. State*, 589 So.2d 1263, 1265 (Miss. 1991) (citations omitted). "The defendant must show that there is a reasonable probability that but for his attorney's errors, defendant would have received a different result in the trial court." *Moody v. State*, 644 So.2d 451, 456 (Miss. 1994).

¶15. As we have held that jury instruction C-6 was properly given by the trial court, Evans' ineffective assistance of counsel argument is without merit, and accordingly, fails.

## Did jury instruction S-5 properly define depraved heart murder?

¶16. Miss. Code Ann. § 97-3-19(1) (b) (1994) defines depraved heart murder as

> [t]he killing of a human being without the authority of law by any means or in any manner shall be murder...[w]hen done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual.

¶17. Jury instruction S-5 stated the following:

> The Defendant, Milton Evans, Jr. has been charged with the crime of murder in Count II of the indictment. The Court instructs the Jury, that if you find from the evidence in this case beyond a reasonable doubt that Milton Evans, Jr., on or about January 31, 1997, in Sharkey County, Mississippi, killed Bill Hollins, Jr., a human being, without authority of law, by shooting him, at a time when Milton Evans, Jr., was committing an act eminently dangerous to others evidencing a depraved heart, regardless of human life, even though Milton Evans, Jr., did not intend with premeditated design

to effect the death of Bill Hollins, Jr., then you shall find the Defendant, Milton Evans, Jr., guilty of murder in Count II of the indictment. If the State has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find the Defendant, not guilty of murder in Count II of the indictment.

Jury instruction S-6 stated the following:

The Defendant, Milton Evans, Jr. has been charged with the crime of murder in Count II of the indictment. The Court instructs the Jury, that if you find from the evidence in this case beyond a reasonable doubt that Milton Evans, Jr., on or about January 31, 1997, in Sharkey County, Mississippi, did willfully and with deliberate design to effect the death of Bill Hollins, Jr., a human being, killed Bill Hollins, Jr., by shooting him, and the defendant was not acting in lawful self defense, then you shall find the Defendant, Milton Evans, Jr., guilty of murder in Count II of the indictment. If the State has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find the Defendant, not guilty of murder in Count II of the indictment.

Evans objected to S-5, arguing that it should contain the phrase "and the defendant was not acting in lawful self-defense" just as S-6 contained. The trial court overruled Evans' objection.

¶18. In essence, Evans now argues that the trial court erred in failing to grant a self-defense instruction regarding the charge of depraved heart murder in conjunction with Bill Hollins, Jr.'s death. Jury instruction C-5 stated that:

[t]he Court instructs you that the killing of a human being by the act, procurement, or omission of another shall be justified under the law when committed in the lawful defense of one's own person where there shall be reasonable grounds to apprehend a design to do some great personal injury, and there shall be imminent danger of such design being accomplished. In other words, the danger, if any, to the defendant, Milton Evans, Jr., must have been either actual, present and urgent, or the defendant must have had reasonable grounds to apprehend that Bill Hollins, Jr., either alone or in concert with others, to kill defendant, or to do defendant some great bodily harm, and in addition to this defendant must have had reasonable grounds to apprehend that there is imminent danger of such design being accomplished by Bill Hollins, Jr., either alone or in concert with others. It is for the jury to determine the reasonableness of the grounds upon which defendant, Milton Evans, Jr., acted.

Because C-5 specifically instructed the jury that the killing of Bill Hollins, Jr., would be justified if committed by Evans in the lawful defense of his own person, and when reading all of the instructions as a whole, we find Evans' argument not to be well taken, and hold that this assignment of error must fail.

## CONCLUSION

¶19. Finding the arguments made by Evans in his appeal to be unpersuasive, this Court affirms the judgment of the trial court.

¶20. **COUNT I: CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**COUNT II: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN**

**THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**COUNT III: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNTS I, II AND III TO RUN CONSECUTIVELY.**

**COUNT IV: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT IV TO RUN CONCURRENTLY WITH COUNTS I, II, and III.**

**PITTMAN, P.J., MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY. BANKS, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY COBB, J. SMITH, J., NOT PARTICIPATING.**

**BANKS, PRESIDING JUSTICE, CONCURRING:**

¶21. I agree with the majority's result but I must write separately because I do not agree with the majority's approval of jury instruction C-6. In my view, the majority misses the point with respect to the accident instruction authored by the trial court. In doing so it approves an instruction which is faulty in that it requires more of a defendant than is necessary to fairly put the question of self-defense. Under the factual setting presented by the evidence, however, I conclude that the error is harmless.

¶22. Evans's theory was that he grabbed the weapon from Luciana Bunton in self-defense against others who were approaching him and that the weapon accidently discharged killing Bunton. The trial court, in Instruction C-6, instructed the jury that if it found that Evans was threatened by others who "took up a weapon" he could rely upon self-defense as a predicate to accidental death. Our law does not require that a defendant show that an assailant possesses a weapon in order to be entitled to a self-defense instruction. *See* Miss. Code Ann. § 97-3-15 (1994); ***Jones v. State***, 418 So.2d 832, 833 (Miss. 1982)("To make an assault justifiable on grounds of self-defense, danger to the defendant must be either actual, present and urgent, or defendant must have reasonable grounds to apprehend design on the part of the victim to kill, or to do him some great bodily harm, and, in addition, there must be imminent danger of such design being accomplished."). We have held that a person is entitled to a self-defense instruction when no other weapon was involved. *See* ***Manuel v. State***, 667 So.2d 590, 592 (Miss. 1995) (defendant entitled to instruction on her theory of self-defense that she was justified in using a deadly weapon against a larger, unarmed assailant). *See also* [***Wade v. State***](#), 748 So.2d 771, 777 (Miss. 1999); ***Hinson v. State***, 218 So.2d 36, 39 (Miss. 1969); ***Marshall v. State***, 220 Miss. 846, 855, 72 So.2d 169, 172 (1954); ***Hill v. State***, 94 Miss. 391, 49 So. 145, 146 (1909).

¶23. Here, Evans's claim was that a group of people was attacking him. This is the basis for his self-defense theory. Evans is not required to assert that one of them used a weapon. "While the use of feet and fists ordinarily would not constitute the use of a deadly weapon, they can constitute a deadly weapon if used with means or force likely to produce death." ***Pulliam v. State***, 298 So.2d 711, 713 (Miss. 1974). The chance for bodily injury or death is even more so when there are multiple attackers against one person.

¶24. The trial court erred in giving C-6. The concern here is that counsel for Evans did not object. The record reflects counsel's concern with the requirement that there be a weapon where his client was being attacked by a number of people. Nevertheless, he withdrew his own proffered instructions on the subject

and accepted those authored by the court. Although the record is less than clear because there is no discussion by instruction number, it appears that the court authored separate self-defense instructions with respect to each of the Hollins victims and an accident instruction with regard to the death of Bunton. Only in the latter instruction was the requirement that an aggressor take up a weapon included.

¶25. Evans had testified, however, that there was in fact another weapon. Counsel's concern was defeating the assertion that one of the assailants was required to have a weapon. In this he was successful. None of the instructions required either of the Hollinses to have a weapon. A review of the closing arguments suggests that nothing in these instructions impaired Evans's argument. Moreover, the prosecutor did not appear to rely upon the language of C-6 to defeat self-defense generally. The only references to a weapon were in response to Evans's testimony.

¶26. In my view, Evans's assertion regarding C-6 must ultimately fail because there was no objection to it and because, despite its error with respect to the general principles of self-defense, that error was of no effect under the facts of this case. His claim of ineffective assistance of counsel must likewise fail for the latter reason. That another weapon was displayed prompting Evans to take the weapon from Bunton was precisely the scenario to which Evans testified. The record is not clear that Evans sought to advance any alternative theory. The failure to do so may be viewed as trial strategy which does not rise to the level of ineffective assistance of counsel.

**COBB, J., JOINS THIS OPINION IN PART.**

1. On direct examination, the following exchange took place between Evans and his attorney:

Q: Are you sure you shot in the air? A: Yes.

Q: Are you sure that you didn't shoot somebody? A: Not knowingly I did not. I really don't think I did.

Q: Is it possible you shot somebody? A: It could have been possible, but...if [the gun] went off...I didn't feel it then [while Evans was allegedly raising the gun from Bunton's back to point it up in the air], but I know when I raised it in the air, it went off then.