KITCHENS, Justice,
specially concurring:
¶ 114. I agree with the majority that the evidence in this case does not support the giving of an imperfect self-defense instruction, since, regardless of Ronk’s intent, Craite was killed during the commission of the crime of arson. I write separately to express my concern over this Court’s recent iterations of the crime we have named imperfect self-defense manslaughter.
¶ 115. At trial, the jury had before it Ronk’s self-defense theory, having been instructed as follows:
The Court instructs the Jury that to make a killing justifiable on the grounds of self defense, the danger to the Defendant must be either actual, present and urgent, or the Defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such designfs] being accomplished. It is for the jury to determine the reasonableness of the ground upon which the Defendant acts.
(Emphasis added.) The jury, thus instructed, rejected Ronk’s self-defense theory and found him guilty of capital murder, the alternative having been acquittal thereof. Ronk requested, and was denied, the following so-called imperfect self-defense instruction:
That the Defendant, Timothy Robert Ronk, did willfully kill Michelle Lynne Craite, without malice, under the bona fide belief, but without reasonable cause therefore [sic], that it was necessary for him so to do in order to prevent Michelle Lynne Craite from inflicting death or great bodily harm upon him....
(Emphasis added.) If the jury had so found, Ronk would have been convicted of manslaughter. See Miss.Code Ann. § 97-3-35 (Rev.2014) (“The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or *1150 by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter.”) (Emphasis added.)
¶ 116. This Court long has construed Section 97-3-35 to incorporate the crime of manslaughter by imperfect self defense:
There are three theories under which the appellant could be guilty of manslaughter: First, that he killed the deceased “in the heat of passion, without malice, by the use of a deadly weapon, without authority of law, and not in necessary self-defense” (section 1238, Code of 1906 [section 968, Hemingway’s Code]); second, that he killed the deceased without malice, under the bona fide belief, but without reasonable cause therefor, that it was necessary for him so to do in order to prevent the appellant from inflicting death or great bodily . harm upon him; and, third, that he unnecessarily killed the deceased while resisting an attempt by the deceased to commit a crime (section 1237, Code of 1906 [section 967, Hemingway’s Code]).
Williams v. State, 127 Miss. 851, 90 So. 705, 706 (1922) (emphasis added). This Court restated the test in 1999: “[t]his Court recognizes the theory of ‘imperfect self-defense’ whereby an. intentional killing may be considered manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm.” Wade v. State, 748 So.2d 771, 775 (Miss.1999) (citing Lanier v. State, 684 So.2d 93, 97 (Miss.1996)) (emphasis added). In La-nier, we had employed the established standard for imperfect self-defense manslaughter: “that [the defendant] killed the deceased without malice, under the bona fide belief, but without reasonable cause therefor, that it was necessary for him so to do in order to prevent the appellant from inflicting death or great bodily harm upon him;.... ” Lanier, 684 So.2d at 97 (quoting Cook v. State, 467 So.2d 203, 207 (Miss.1985); Williams, 90 So. at 706) (emphasis added).
¶ 117. The “bona fide (but unfounded)” language crept into our jurisprudence in Wade, 748 So.2d at 775, in the complete absence of any explanation, authority, or justification for revision of the well-established phrasing. I disagree that it precisely states the standard for the sort of conduct which can be found, by a jury, to constitute imperfect self-defense manslaughter. Finding no legal definition of the word unfounded, I resort to dictionaries. One definition of unfounded is “having no foundation of basis in fact.” Compact Oxford English Dictionary 1260 (2d ed.2003). Another well-known English language dictionary declares the word to mean “[n]ot based on fact or sound observation; groundless.” The American Heritage Dictionary 740 (2d ed.1983).
¶ 118. Thus, for one to harbor an unfounded belief that self defense was warranted under a particular set of circumstances would require a determination that the belief had no foundation in fact or that the belief was groundless. Mississippi’s older and longer-tenured standard involves a different analysis: that the bona fide belief that self defense was necessary was “without reasonable cause therefor.” Williams, 90 So. at 706 (emphasis added). In other words, our standard requires the defendant’s belief in the necessity of his conduct to have been unreasonable, a standard which juries routinely determine. The imperfect self-defense manslaughter standard, as detailed in Williams, precisely specifies what the State is required to prove: that the defendant’s act of purported self defense was without reasonable cause. The crime of manslaughter by imperfect self defense is thus contrasted with an acquittal of a homicide charge, which requires that the defendant’s act of purported self defense be reasonable. I *1151 would abandon the “bona fide (but unfounded)” language found in Wade, an innovation which serves no good purpose and injects a basis for confusion where none previously existed.
¶ 119. Additionally, I agree with Justice Dickinson’s well-reasoned opinion that this Court has, in effect, amended the capital murder statute, which requires that a person be “engaged in the commission of’ an enumerated crime. Miss.Code Ann. § 97-3-19 (Rev.2014). A majority of this Court has, without reasonable explanation or authority, expanded that definition to include killings which occur before or after the commission of an enumerated crime. I join Justice Dickinson in advocating the abolition of the “one-continuous-transaction doctrine.” But the majority recognizes that the jury here was instructed on the “one-continuous-transaction doctrine,” and the majority is correct that this was an accurate statement of existing Mississippi law. Until such time as five or more members of this Court determine that the “one-continuous-transaction doctrine” is unsound, this judicially contrived concept remains viable in our State’s jurisprudence.
DICKINSON, P.J., JOINS THIS OPINION.